ELLIS, Judge.
This suit involves a collision between an automobile owned by the plaintiff and driven by his brother and one owned and being operated by the defendant on or about October 18, 1947 between eight and nine o’clock A.M. in which the plaintiff prays for judgment against the defendant for the sum of $600.00 with legal interest and all costs and in which the defendant has filed a reconventional demand representing damages alleged to have been caused to his automobile in the sum of $256.07. Plaintiff alleged that his brother was driving his automobile on a mission for him on a gravel road leading from Eunice, Louisiana to Basile, Louisiana in a northerly direction, and that the defendant was traveling on the same highway in the same direction and to his rear; that he attempted to pass the plaintiff’s car and cut over too short in his operation to clear plaintiff’s car and caught the “back fender of petitioner’s automobile, scraped, tore the door and side of petitioner’s automobile.”
*340 The defendant denied all material allegations and plead contributory negligence on the part of the plaintiff. Defendant charged plaintiff with not keeping a lookout for vehicles traveling behind him, and that as he approached plaintiffs car from the rear, the driver of plaintiff’s car was on his proper lane of travel but just as defendant started to pass, the driver of plaintiffs automobile turned suddenly to his left into the lane reserved for passing. As a result of this careless and negligent act, the defendant was forced to cut his car further to the left but in spite of every effort on his part he was unable to prevent striking “the left front fender of plaintiff’s automobile with the right front of respondent’s automobile.
The case was duly tried and there was judgment in favor of the plaintiff in the full sum of $271.79 with legal interest thereon from judicial demand until paid and all costs, and the reconventional demand of the defendant was denied and dismissed.
From this judgment the defendant has appealed and the plaintiff has answered the appeal in which he prays that the judgment of the District Court be amended so as to increase the amount of the award to the sum of $600.00 with interest and costs as prayed for, and as thus amended the judgment be affirmed.
The evidence revealed that on the day of the accident, the plaintiff was butchering a beef for a community butchery at his home and that he sent his brother, Burley Sonnier, in his automobile to the town of Basile, Louisiana to get bread which he had done, and also had picked up some clothes which had been placed or were hanging near the rear seat of the car. He was accompanied on this trip by two cousins, namely, Collins and George Jenkins. The testimony of these two cousins, as well as Sonnier, is to the effect that while driving at about 30 miles per hour on their proper side of the road plaintiff’s 1941 Mercury was struck from the rear by the 1941 Ford sedan of the defendant. It was their testimony that the defendant’s car struck plaintiff’s rear left fender, scraped the left side of his car all the way to the front and seriously damaged the left front fender and front wheel and that the collision caused plaintiff’s car to immediately stop on the road and that defendant’s car turned to its left and ended up on its side in the left ditch of the road going north. The defendant’s automobile was occupied by himself, his wife and his 16 year old son, all of whom were sitting on the front seat. Defendant testified, and it is corroborated by his wife and son, that he was driving behind plaintiff’s car just prior to the accident and that it was being operated on the left or improper side of the road; that when he was approximately 150 yards of the plaintiff’s car he blew his horn, whereupon the driver of plaintiff’s car moved over to his right or proper lane of tráffic, and that defendant, after following plaintiff’s car for about 150 yards and when the dust cleared some, as this was a gravel road with two well-packed lanes on the north and south side and loose gravel in the middle, attempted to pass plaintiff’s car without any further warning signal such as blowing his horn; that when he had reached about 25 feet from plaintiff’s car and when traveling approximately 35 or 40 miles per hour, the plaintiff’s car turned sharply to the left in his path and that it was too late for him to then blow his horn or apply his brakes; that all he could do was steer his car to the left in an attempt to avoid a collision, but that the right front fender of his automobile struck the left front fender of plaintiff’s automobile which had a tendency to knock the front end of plaintiff’s automobile back to its right, and as a result of the front end of both automobiles going in opposite directions, the rear ends and main part of the bodies of the two cars collided.
The trial judge, in addition to the failure of the defendant to blow his horn or give any warning that he intended to pass plaintiff’s automobile, found that the plaintiff’s car came to rest approximately two feet to the left of the center line of the highway which would be in its improper lane of traffic, but stated that even if that be true, the highway was 38 feet in width and, therefore, the defendant had a distance of 17 feet to the left of plaintiff’s car which *341 he could have used to avoid the collision had he not been going at an excessive speed under the circumstances, and that it “was the duty of the defendant to keep his car under control and to go around plaintiff’s car far enough so as to avoid any possibility of collision. There is not the least doubt that this collision occurred to the left of the center line of the highway in the passing lane of traffic as testified to by the defendant.
The driver of the plaintiff’s car and his two cousins, who were passengers with him, all testified that the defendant struck the rear of their car while it was driving on its proper right hand side of the road. It was testified by the defendant, his wife atid son, that the car was struck first at the left front fender as it swerved across the center line of the highway, into the left or south bound traffic lane, and that after the accident it came to rest parallel to the center line with its left side and wheels approximate^ two feet to the left of the center line of the highway.
The lower court accepted the testimony of a witness by the name of Linus Bertrand, who was known to the court and whom the court stated appeared disinterested. This witness, together with a man named Miller, were the first to reach the scene of the accident. At the time of the collision they were approximately 150 yards away. This witness placed the plaintiff’s car after the accident as sitting parallel to the side of the road with approximately two feet of the left hand side of the car across the center line of the highway. This witness’ testimony is corroborative of that of defendant, his wife and son as to the position of the plaintiff’s automobile after the wreck. The other witness, Miller, was summoned by the plaintiff but not put on the stand, although he was in the Court Room and the plaintiff talked to him a few minutes prior to the closing of the testimony. Therefore, it cannot be presumed that his testimony would have been favorable to the plaintiff, in fact, it must be presumed that it would have been unfavorable.
The defendant is further corroborated in his version of the manner in which this collision occurred by the mechanic who made an estimate of plaintiff’s car and who testified “that the impact was right at the cow (cowl) which is the rear part of the front between the fender and the door,” referring to the left side of plaintiff’s car, and that the damage to the plaintiff’s car along the side and to the rear could have been caused when plaintiff’s car kicked back after the wreck.
This conclusively proves that at the time the main damage was done just to the rear of the left front fender that the front end of plaintiff’s car was farther to the left than the rear end of plaintiff’s car. This fender was so badly damaged it had to be replaced with a new one, while the left rear fender of plaintiff’s car only had to be straightened out. It is reasonable from the physical facts, if we accept the testimony of Eddie Brown which is undisputed in the record and, in fact, corroborated, that the main blow was to the left front fender of plaintiff’s car; that when the blow occurred the defendant was attempting to pull to his left in order to avoid the accident which would cause the body of his car and the rear end to swing to its right and the force of the blow to the front end of plaintiff’s car- would cause the body and rear of his car to swing to its left, thus causing the rear ends and main portion of the bodies of the two automobiles to come together causing the damage to the rear fender and left side of the plaintiff’s car and the damage to defendant’s car.
We also find in the record that after the accident a deputy sheriff came to the scene but did not want to participate, that is, take any sides apparently, so he called in a State Trooper by the name of Hebert whom the plaintiff reserved the right prior to the beginning of the taking of testimony to call at a further date if necessary. This witness was never called, however, Sonnier, the driver of plaintiff’s car referred to this trooper in his testimony. He stated that, “He did not want to tell me I was on my side.” It is clear that the trooper must not have thought that Sonnier was on his side of the road, and the failure of the plaintiff to call the trooper at least leaves this state *342 ment uncontradicted in the record and is corroborative of defendant’s account of the accident.
Immediately after the accident the defendant and the occupants of plaintiff’s car engaged in quite a bit of conversation all of which revolved around the question as to why the driver of plaintiff’s car suddenly swerved across the road at the time defendant attempted to pass him, thereby causing the collision. In attempting to find the reason for such action on the part of the operator of plaintiff’s automobile it was stated that plaintiff’s automobile had a flat tire and the driver of plaintiff’s car said: “I guess that is what pulled me to the side.” The driver of the car also statr ed in this conversation that at the time it happened he was telling the boy in the back to be careful about his clothes he had just got back from the cleaners. Nowhere in the conversation immediately after the wreck or any other time did the driver or operator of plaintiff’s car accuse the defendant of running into the rear end of their car while they were driving in their proper lane of traffic. Certainly, this should have been their first reaction rather than to entirely talk about what caused plaintiff’s car to swerve to the left. It would have been natural for them to accuse defendant of having struck them in the rear as they contend rather than for the entire conversation to be an inquiry by the defendant and occupants of plaintiff’s car as to why the plaintiff’s car swerved suddenly across the road.
Therefore, we conclude that this accident occurred as contended by the defendant and was caused by the plaintiff negligently swerving suddenly to his left in the path of the defendant’s passing car and negligently loosing control of his car to the extent that it suddenly veered into the opposite lane of traffic, and as the defendant at this moment was only a distance of approximately 25 feet from plaintiff’s car it was then too late to blow his horn or apply his brakes, and that under the circumstances, the only action which the defendant could take was to steer his car further to the left in an attempt to avoid a collision.
The only question remaining is whether or not the sole and only cause of the accident was the negligence of the driver of plaintiff’s automobile and, if so, the recon-ventional demand of the defendant should be granted.
It would seem that the only possible negligence on the part of the defendant Brous-sard would have been his failure to blow his horn immediately before passing the Sonnier car. As stated, he had blown his horn and when the driver of plaintiff’s car steered his car back into the right or proper lane of traffic it was only natural that the defendant should have assumed that the plaintiff heard this warning signal.
In the case of De La Vergne v. Employers Liability Assurance Corporation, Ltd., 4 So.2d 66, 69, decided by this Court, a situation similar to the case at bar was involved where the motorist approaching from the rear attempted to pass the motorist in front and failed to blow his horn, and from that case we quote:
“With regard to his failure to blow the horn of his car, in view of the situation which presented itself, the question that is suggested is whether the sounding of the horn was necessary and also whether it would have served to avoid the accident.. Mrs. Thompson’s car was, up to the moment of her sudden attempted turn, on its right-hand side of the road, leaving plaintiff the usual necessary space on her left to pass ahead of her. Had she given him the least idea of her intention to make the turn, or had her car obstructed the clearance of his lane of travel on the left in the least, it would then have been imperative for him to sound the horn of his car and indicate to her that he intended to overtake her. The purpose of the law in requiring the giving of an audible warning by the overtaking vehicle, as we view it, is to favor its driver to the extent that his normal progress on the highway will not be unnecessarily impeded by the driver of' the car preceding him in not leaving or giving him sufficient clearance in which to. pass ahead.”
In the case of Great American Insurance Company v. New Amsterdam Casualty *343 Company et al., 15 So.2d 241, also decided by this Court, in which the facts showed that a motor bike was traveling on its right hand side and that a motorist in the rear attempted to pass the motor bike without blowing his horn thereby striking it in the passing lane when obviously the driver of the motor bike had crossed over without warning, it was held:
“Where motorbike rider, without warning, made an attempt to turn around in the middle of a block at the moment an .automobile was about to pass and collision resulted when the motorbike turned back to the right, motorbike rider’s negligence, and not negligence of automobile driver in failing to sound horn, was the proximate cause of the collision.”
The defendant, under the facts in this case, had every reason to believe that the driver of plaintiff’s car would continue on his right and had no reason to expect the emergency which was created by the driver of plaintiff’s car in swerving suddenly into the path of defendant’s car, without warning of any kind. We are, therefore, of the opinion that the sole proximate cause of this accident was due to the driver of plaintiff’s car steering suddenly to his left without warning in the path of the defendant’s passing automobile or in not having his car under proper control and negligently allowing it to so swerve. The failure of the defendant to blow his horn immediately before passing cannot be charged as negligence in view of the other circumstances.
Defendant’s reconventional demand in the amount of $256.07 has been fully proven and should be allowed.
It is, therefore, ordered that the judgment of the District Court be reversed and that there be judgment against the plaintiff rejecting his demand and in favor of the defendant on his reconventional demand in the full sum of $256.07 with legal interest from judicial demand until paid, plaintiff to pay all costs.
ROBERT D. JONES, Judge, sitting ad hoc.
DORE, J., not participating.