95 So.2d 757 (1957)
George BENENATE
v.
Avis E. BROOKS, Paul F. Shorts, Clarence Eloise, Manufacturers Casualty Insurance Company, Indiana Lumberman's Mutual Insurance Company, The Insurance Company of Texas.
No. 20791.
Court of Appeal of Louisiana, Orleans.
May 27, 1957.
Rehearing Denied June 24, 1957.
Writ of Certiorari Denied October 8, 1957.
*758 D. A. McGovern, III, New Orleans, for George Benenate, plaintiff-appellant.
May & Carrere, New Orleans, for Travelers Ins. Co., intervenor-appellant.
Porteous & Johnson, F. Carter Johnson, Jr., New Orleans, for Avis E. Brooks and Manufacturers Cas. Ins. Co., defendants-appellees.
Adams & Reese, New Orleans, for Paul F. Shorts and Indiana Lumbermens Mut. Ins. Co., defendants-appellees.
No appearance for Clarence Eloise and Insurance Co. of Texas.
McBRIDE, Judge.
This appeal involves a three-car automobile collision which occurred on February *759 5, 1954, at about 4:30 p. m., on the Airline Highway at a point on the south or New Orleans side of the Kenner Overpass.
The Airline Highway is a four-lane paved roadway, two lanes being used by vehicular traffic traveling in the direction of New Orleans and the other two lanes being used by traffic moving in the opposite direction or toward Baton Rouge. Clarence Eloise was driving his Pontiac automobile in the direction of New Orleans in the slow or outside lane of the highway at a speed of about 30 to 35 miles per hour. As Eloise came over the crest of the overpass, he observed an automobile ahead of him in the same traffic lane. This automobile, during the course of the trial of the case, was referred to as the "unknown car." According to Eloise, the unknown car came to a sudden and unexpected stop when he was approximately 15 feet to its rear. He claims he immediately applied his brakes and made a swerving maneuver to his left so as to pass the unknown car, and his automobile was at a 45-degree angle when it was violently struck from the rear by a Buick automobile owned and driven by Avis Brooks. The impact of the Brooks automobile striking the rear of the Eloise car knocked the latter into the fast lane of traffic used by automobiles traveling in the direction of Baton Rouge, in which Paul F. Shorts was driving his Dodge automobile, with the result that Shorts' automobile came into collision with the right front side of the Eloise car. This second collision occurred almost simultaneously with the first.
George Benenate, the plaintiff, a guest passenger in the Eloise car, claims he suffered severe physical injuries as a result of the two collisions and by this suit he endeavors to recover therefor. He impleads as defendants, in solido, Clarence Eloise and his liability insurer, The Insurance Company of Texas, Paul F. Shorts and his liability insurer, Indiana Lumbermens Mutual Insurance Company, and Avis E. Brooks and his liability insurer, Manufacturers Casualty Insurance Company. An intervention was filed by Foster Wheeler Corporation and The Travelers Insurance Company. The intervenors allege that the plaintiff, Benenate, at the time of the accident was an employee of Foster Wheeler Corporation, and that his injuries arose during the course and scope of his employment and, therefore, The Travelers Insurance Company, which is the workmen's compensation insurance carrier of Foster Wheeler Corporation, paid Benenate workmen's compensation benefits in the sum of $1,380 and aid his medical expenses in the sum of $1,668.87. The intervenors aver they are the legal subrogees of Benenate to the amount of such payments, and they pray for judgment against the defendants in solido therefor.
After a lengthy trial in the lower court, there was judgment in favor of The Travelers Insurance Company, as subrogee of plaintiff, for the sum of $527.50, against Clarence Eloise and his insurer, The Insurance Company of Texas, jointly and in solido. The suit and the intervention were dismissed as against the other defendants.
Benenate, Foster Wheeler Corporation, and The Travelers Insurance Company have appealed from the judgment. Eloise and his insurer, The Insurance Company of Texas, answered the appeal praying that the judgment against them in favor of The Travelers Insurance Company be reversed.
Subsequent to the filing of the appeal in this court, The Insurance Company of Texas was placed in the hands of John D. Wheeler, as receiver, by virtue of a judgment issued by the Ninety-eighth District Court of Travis County, Texas, on March 5, 1957, and ancillary receivership proceedings were instituted in the State of Louisiana by the Insurance Commissioner, and Rufus Hayes, Commissioner of Insurance, has been appointed ancillary receiver for the corporation. On proper motion John D. Wheeler, the receiver, was made a party defendant.
A few days before the date set for argument of the case in this court, the attorneys *760 who had represented Clarence Eloise and The Insurance Company of Texas in the lower court withdrew from the case, and when the matter was called for argument and heard by us said defendants, Eloise and John D. Wheeler, receiver for The Insurance Company of Texas, were absent and unrepresented.
No useful purpose at all would be served by recounting the various charges of negligence plaintiff makes against the three defendant motorists, nor is it necessary to engage in a dissertation on the testimony of the various witnesses. Besides the evidence of Benenate, we have before us the testimony of Eloise, Shorts, and Brooks, and also that of three passengers who were riding in the Brooks car, and three passengers who were riding with Eloise when the accidents occurred.
Eloise's fault is manifest. He was guilty of gross negligence in following the unknown car at a distance of only 15 feet at the admitted speed of 30 miles per hour. The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of such vehicle and the traffic upon and the condition of the highway. LSA-R.S. 32:234. Thus, a motorist following another automobile must have his car under control and must drive at such speed that he can stop in case of an emergency. Had Eloise not followed the unknown car at such a close distance, his ill-fated swerve to the left would not have been necessary.
We can perceive no negligence on the part of either Brooks or Shorts.
Brooks was driving toward New Orleans in the fast lane for traffic and came down the slope of the overpass slightly to the rear and to the left of the Eloise automobile, and at all times his automobile was occupying the fast lane and was never directly behind the Eloise vehicle. Eloise, due to the emergency created by his own negligence, suddenly swerved into the fast lane in order to avoid running into the unknown car, and in doing so caused his automobile to come directly into the path of the oncoming Brooks car making the accident unavoidable insofar as Brooks is concerned. Plaintiff's counsel argues that Brooks was overtaking and was about to pass the Eloise car and was but 20 feet to its rear when the Eloise car swerved into the fast lane. The contention is made that Brooks followed the Eloise car at an unsafe distance and did not give a horn signal of his intention to pass, and that Brooks further failed to apply his brakes in time to avoid the collision. The contention that there was an unsafe distance between the two vehicles is without merit. The vehicles were not in the same lane and Brooks whose speed was greater than the speed at which Eloise was driving was entitled to travel in the fast lane. No reason has been assigned, and we know of none, why Brooks should have applied his brakes when he heard the squealing of Eloise's brakes.
Brooks was 50 feet to the rear of Eloise's car when he heard the brakes squealing, and he says he took his foot off his accelerator watching what was happening and then it was Eloise suddenly swerved from the slow lane into the fast lane 20 feet ahead of him and directly into his path. Some argument is made that Brooks was negligent because he failed to blow his horn as he approached the Eloise car, but the failure to give horn signal did not amount to negligence as we are unaware of any statute, highway regulation, or jurisprudence which specifically requires or holds that a motorist in the left or fast lane must give a horn signal to an automobile in the right or slow lane of the intention to pass. True, LSA-R.S. 32:233, subd. B provides that the driver of an overtaking vehicle shall give audible and sufficient warning of his intention before overtaking, passing or attempting to pass a vehicle proceeding in the same direction. But, it is quite clear that the Legislature *761 in adopting said section of the statute had no intention to require that the driver of every vehicle should sound his horn whenever he intends to pass a vehicle which is in another lane or sufficiently far to the right as to permit a safe passage. All that the said section means is that when the overtaking vehicle attempts to pass a vehicle which is in its path, the overtaking driver should sound his horn in order to give the driver of the forward vehicle notice of the intended passage so that he can swerve right thus affording a path to the overtaking car. On two occasions we held this to be the meaning and import of similar provisions contained in a traffic ordinance of the City of New Orleans, and we do not think that the rule should be any different with reference to LSA-R.S. 32:233, subd. B. See Cantrell v. H. G. Hill Stores, Inc., La.App., 193 So. 389; Martin v. Globe Indemnity Co., La.App., 64 So.2d 257.
We agree with what the Court of Appeal for the First Circuit said in Mooney v. American Automobile Insurance Co., 81 So. 2d 625, 628:
"* * * Furthermore, the main necessity for blowing the horn is so that the car in front will give way, * * *."
The argument is advanced that Shorts, who approached from the opposite direction, was negligent in driving his vehicle in the left or fast lane and that if he had been driving in the right lane where it is said he should have been, his car would not have collided with the Eloise car. Shorts satisfactorily explained why he was traveling in the fast lane. He states that there was a car to his right. He resorted to his brakes immediately upon becoming cognizant of the danger, but his attempt to avoid the collision was ineffectual.
The final phase of this case is the question of the amount of the damages to be assessed.
At the outset the observation should be made that we are highly suspicious of the demands made by plaintiff as his claim is inflated beyond reason. He itemizes his damages as follows:

1. Pain and suffering on date
 of accident $ 10,000.00
2. Pain and suffering while
 hospitalized in V. A.
 Hospital for 35 days
 (February 5, 1954-March
 13, 1954) 17,500.00
3. Pain and suffering while
 hospitalized in Hotel
 Dieu Hospital (April 18,
 1954 to May 30, 1954
 42 days) 21,000.00
4. Hospital billCharity Hospital 27.50
5. Hospital billV. A. Hospital 997.32
6. Hospital billHotel Dieu
 Hospital 717.50
7. BillDr. E. F. Salerno 500.00
8. Loss of wagesFebruary
 5, 1954-August 5, 1954, 26
 weeks at $128.00 per
 week 3,328.00
9. Loss of appellant's ability
 to resume his trade of
 boilermaker and steeplejack
 in the future 50,000.00
 __________
 Total $104,070.32

None of the many occupants of the three cars, save Benenate, claims to have sustained injuries as a result of the collision. Benenate declares he sustained serious injuries in the umbilical region of the body and that his difficulty stems from traumatic knuckling of the intestines with secondary inflammation. He also contends it was necessary to undergo surgical procedures to alleviate his condition.
The medical testimony shows that surgery was performed on April 24, 1954, and again on May 4, 1954. While Dr. Salerno testified that the surgery of April 24, 1954, was connected with the accident, he could not say that the accident caused the necessity for the second operation *762 on May 4, 1954. The trial judge found as a fact that none of this surgery was rendered necessary by the accident and in that finding we must concur. The truth of the matter is that plaintiff had a pre-existing physical condition which does not appear to have been aggravated to any extent by virtue of the accident of February 5, 1954, and we think, as did the trial court, that plaintiff suffered only shock and fright and that it was this that necessitated his going to Charity Hospital and Veterans Administration Hospital for treatment. For the shock and fright the trial judge thought an allowance of $500, plus Benenate's Charity Hospital bill of $27.50, would be liberal and judgment was rendered therefor in favor of The Travelers Insurance Company as legal subrogee. We think the allowance was fair.
The Travelers Insurance Company as the legal subrogee of Benenate's employer may maintain an action against the employee's tort-feasor, causing the injuries, for which it paid the workmen's compensation benefits, to recover the amount of such payment. LSA-R.S. 23:1101, 23:1103, 23:1162. But the trial judge erred in awarding to the compensation insurer the $27.50, which represents medical expenses which Benenate himself expended. All that The Travelers Insurance Compay can recover from the tort-feasor is the amount to which Benenate is entitled for his physical injuries and not for the amount which Benenate incidentally expended for the treatment of those injuries.
Counsel for The Travelers Insurance Company argue that the allowance of $500 for bodily injuries is inadequate and that the amount should be substantially increased. They maintain that The Travelers Insurance Company would not have paid the large amount for workmen's compensation and medical expenses if there had not been a substantial exposure to liability under the compensation statute, and that such payments were made on the advice of its medical staff and on the advice of its attorneys. The insurance company might have acted on the advice of its physicians and attorneys, but in adjudicating the case it is our duty to act on the record before us, and doing so, our conclusion is that the aforesaid amount is a proper allowance for Benenate's damages sustained in the accident.
Subsequent to the argument of this case, Rufus D. Hayes, Commissioner of Insurance of the State of Louisiana, in his capacity as ancillary receiver of The Insurance Company of Texas, appeared in the case by motion and suggested to the court that by judgment dated March 4, 1957, in the suit entitled: "Rufus D. Hayes, Commissioner of Insurance, State of Louisiana v. ICT Insurance Company," No. 59,413 of the docket of the Nineteenth Judicial District Court for the Parish of East Baton Rouge, The Insurance Company of Texas, its officers, agents, directors, stockholders, policyholders, employees, and creditors were enjoined from bringing or further prosecuting any action at law or in equity against said insurance company in the State of Louisiana. This injunction, of course, was issued to preserve the status quo of the assets of said insurance company and all claims against it. In view of the restraining order, we are powerless to adjudicate the plaintiff's case as against said insurer.
Therefore, for the reasons assigned, the judgment is amended so as to reduce the amount due The Travelers Insurance Company to the sum of $500, with legal interest from judicial demand until paid, plus all costs of the intervention, and the judgment is further amended so as to award plaintiff, George Benenate, the sum of $27.50, with legal interest from judicial demand until paid, and for costs of suit, the judgment to run against Clarence Eloise. And as thus amended and in all other respects the judgment is affirmed. Costs of appeal are to be paid by The Travelers Insurance Company.
Amended and affirmed.