105 So.2d 318 (1958)
Tommie F. DUKES
v.
Al Joe KIRKWOOD and Fidelity & Casualty Co. of New York.
No. 4641.
Court of Appeal of Louisiana, First Circuit.
June 30, 1958.
Rehearing Denied October 6, 1958.
L. C. Parker, Baton Rouge, for appellant.
Breazeale, Sachse, Wilson & Hebert, Baton Rouge, for appellees.
LOTTINGER, Judge.
This is a suit wherein the plaintiff, Tommie F. Dukes, seeks damages for personal injuries, received in an automobile accident when the vehicle of Mose Scott, in which the plaintiff was riding as a guest passenger, was struck by an automobile owned and driven by Mr. Al Joe Kirkwood. Joined as defendants are Kirkwood and his liability insurer, Fidelity & Casualty Company of New York.
The case was decided adversely to the plaintiff in the court below and the matter is before us on an appeal taken by the plaintiff which rejected his demands.
The trial judge rendered written reasons for judgment wherein he held, in part, as follows:
"The plaintiff alleges in his petition that the Scott car was proceeding north `and at the time of the accident was stopped, and was about to make a left turn off *319 of the said highway' to go west on the Rafe Mayer gravel road `within the corporate limits of the City of Baton Rouge.' I interject here that the location is not in the City of Baton Rouge but is some eight to ten miles north of the corporate limits of the City of Baton Rouge in the open country and is not even in sight of any establishment of any kind. The said petition further alleges that the accident was caused by the negligence of the defendant Kirkwood by his driving at excessive speed; his failure to keep his car under control; his failure to keep a proper lookout; his failure to see the automobile of Scott `stopped to effect a left turn', or, if he had seen it in failing to slow down or stop; in driving his automobile into and against another automobile causing property damage and personal injuries; in failing to observe the rules of the road and in following too close behind another vehicle.
"The joint answer of defendants denies any negligence on the part of Kirkwood and alleges that said `accident occurred at a time and under circumstances that gave defendant Al Joe Kirkwood no opportunity of any kind whatsoever to avoid colliding with said Ford automobile' and that the said accident `was caused by the negligent operation of the Ford automobile by Mose Scott.' The said answer further described the circumstances causing the accident and the particular acts of negligence of which it alleges the said Scott was guilty.
"The testimony of Dukes, the plaintiff, lends very poor support toward the establishment of any right to recover damages. He testified that `as far as I know that Mr. Kirkwood hit the left rear of Mose Scott's car' (Tr. 81) and `I didn't see his car or nothing.' (Tr. 32) After that he claimed he was unconscious and did not know anything about what happened. He testified that Scott was driving about 35 miles per hour and 15 to 20 yards before the Scott car got even with the Rafe Mayer road Scott pulled over to the left side of the highway; that part of the Scott car had gotten into the gravel road when it was hit, but he didn't know how much of the car was in the gravel road and he did not know whether any part was still on the highway (Tr. 82) and (Tr. 83). That is about the full extent of the plaintiff's testimony on the facts. He says he didn't know when the officers came to the scene. (The officers testified that they talked with Scott and the plaintiff and they both said they did not need any assistance and that they did not appear to be injured.)
"Mose Scott, the driver of the car in which the plaintiff was riding, contradicts himself in so many important particulars that it is impossible to ascribe to his testimony sufficient weight to overcome the consistent and impressive recitation of facts by defendant Kirkwood and his serious, frank and sincere manner of telling them. Scott says (Tr. 23) that when the accident occurred his car was not in either lane of the paved highway because he had made his turn off to the gravel road; that when he got to the crossing he held out his hand and after making that statement he added that he first held out his hand for a left turn 60 to 70 yards before he reached a point even with the gravel road and that he kept his hand out all the way until he was struck; that he was travelling 30 to 35 miles per hour when he put his hand out for the turn and in the 60 to 70 yards before reaching the gravel road he reduced his speed to 10 to 15 miles per hour (Tr. 32); that he got up to the intersection before making his left turn because he always kept well to the right when he made such a turn so that if a car is coming out of the road into which he desires to enter he will not interfere with that other car (Tr. 34); that he did not make a sharp turn; that he just put his hand out to signal the left turn 60 to 75 yards before he got to the intersection and then traveled 20 yards in his right lane when he crossed the center line from his right lane into the left lane and kept going north in *320 the left lane (Tr. 72); that he crossed the black center line about 20 yards before he reached the gravel road (Tr. 5, 74); that he got completely in the gravel road to go west when he was struck and when hit the back wheels of his car were entirely off the pavement (Tr. 25, 72); that it seemed the Kirkwood car came completely off the pavement to strike the rear end of his car, but he doesn't know where the Kirkwood car came from (Tr. 36, 72, 73, 80); that the back wheels slid around on the gravel and stopped (Tr. 73); that the police officers told him that the car was `well off the road when he was hit' (Tr. 72, 73, 74); that when he first put his hand out he looked in his rear view mirror and saw a car about a quarter of a mile away (Tr. 33); that he didn't see the Kirkwood car and didn't know it was behind him and didn't know how fast it was traveling (Tr. 24, 29); that he didn't see any lights blinking and didn't hear any horn blow to indicate his desire to pass, but that the Kirkwood horn was blowing after the collision (Tr. 25, 29, 37, 72, 73, 80); that after the accident his (Scott's) car was on the left shoulder of the paved highway north of the gravel road intersection facing slightly northwest and that the Kirkwood car was on the other, or the right, shoulder of the paved highway facing north.
"Defendant Kirkwood was first called on cross-examination by counsel for the plaintiff. He later testified in chief for the defense and was then again cross-examined. There is no important discrepancy in his testimony about the facts of this accident. He explained that he was going north in his right lane at about 50 miles per hour when he took note of the Scott car traveling about 35 miles per hour; that after he pulled into his left lane to pass he gave notice of his desire to pass by blinking his headlights and blowing his horn (Tr. 17); that when he was within about three car lengths of the Scott car Scott started pulling over into the left lane (Tr. 5, 6, 120); that up to that time Scott was in the right lane (Tr. 121); that he did not see Scott give any signal to make a left turn and that he would have seen it if Scott had given any (Tr. 6, 21, 127, 129); that as Scott came over into the left lane Kirkwood saw he was going to hit the Scott car, and in an effort to avoid it Kirkwood reduced his speed to about 35 miles per hour and pulled suddenly to his right behind the Scott car to go back into the right lane (Tr. 6); that he almost made that maneuver in safety, but the left front corner of the Kirkwood car struck the left rear corner of the Scott car, forcing the Scott car forward and instead of turning into the gravel road Scott's car continued in a northwesterly direction where it came to rest on the west shoulder of the paved highway; that his (Kirkwood's) car continued in the northeast direction about the same distance to the right shoulder of the paved highway where it stopped partly on the pavement (Tr. 18, 19); that the impact was near the center black line of the pavement some distance south of the south line of the Rafe Mayer road (Tr. 21, 117); that when the impact took place the front end of the Scott car had just about reached the south line of the gravel road but the impact was south of the south line of the gravel road (Tr. 125).
"The police officers who arrived at the scene before the cars were moved found the two vehicles at the same location explained above. Those officers said the point of impact was determined by them to have been about two feet east of the black center line of the paved highway; that the pavement was 22 feet wide and the point of impact was 9 feet west of the east pavement line and 13 feet east of the west pavement line.
"I find that the facts are that Scott was traveling at about 35 miles per hour when he started to make his left turn some three car lengths ahead of Kirkwood, after Kirkwood had already pre-empted the left traffic lane; that Scott did not give any signal to indicate his left turn; that after *321 Kirkwood had moved his car into the left lane and before Scott made any movement to turn left from the right lane, Kirkwood blew his horn and blinked his lights to signal his intention to pass; that without making any proper effort to determine the presence of Kirkwood's car going in the same direction behind him, Scott turned from his place of safety in his right lane into the left lane directly in front of the Kirkwood car when it was not safe to do so, delaying the Kirkwood car and blocking its path with the front portion of the Scott car, thereby creating a dangerous emergency; that Kirkwood made a reasonable effort to avoid the collision by turning suddenly to his right and though in doing so the left corner of his car struck the left rear corner of the Scott car, this collision was unavoidable insofar as Kirkwood is concerned and this movement no doubt prevented a much more serious accident which I believe would have resulted in greater damage if Kirkwood had continued ahead into the Scott car in the left lane. Scott says he looked in his rear view mirror before he started to turn and only saw the lights of a car about a quarter of a mile away. If the lights he saw were the lights of the Kirkwood car, it was quite some time before Scott made the turn and not timely. If he looked in the mirror at the time he started the turn the reason he did not see the Kirkwood car is because it was already in its left lane coming up to pass. In this as well as every other duty applicable to the prevailing situation, Scott failed to exercise the care imposed upon him by law. I note that plaintiff's petition charges that one of the alleged acts of negligence on the part of Kirkwood is that he collided with the Scott car when the Scott car was stopped preparatory to turning into the gravel road, but neither the plaintiff nor Scott testified that Scott stopped before the accident.
"Counsel for plaintiff argues that Kirkwood was attempting to pass the Scott car at a road intersection in violation of [LSA-]R.S. 32:233 Plaintiff's petition does not allege that act as one of the acts of negligence of which the plaintiff's petition claims Kirkwood guilty. On that subject I know of my own knowledge that the Rafe Mayer road is an unimportant, narrow graveled lane or road. After one gets into that road it is not much wider than an automobile. It is a short road extending from this Scotlandville-Baker road to the Scenic Highway. It is not necessary to determine whether this road is of sufficient size or importance to bring its intersection under the provisions of [LSA-]R.S. 32:233 concerning the passing of a vehicle at a road intersection, because I am of the opinion that if Scott had stayed in his right lane as he should have done, that Kirkwood could have negotiated his passing before the cars reached the intersection. Kirkwood was traveling 50 miles per hour and Scott was reducing his speed from 35 miles per hour to 10 or 15 miles per hour in order to make his left turn when he reached the intersection. Therefore, I find no negligence on the part of Kirkwood on that point. The photograph filed in evidence, D-1, shows that there is a paved road leading to the east opposite the Rafe Mayer road intersection. This paved road is new and leads into a new subdivision lately laid out. This new road leading to the east was not there at the time of this accident and the Rafe Mayer road was a `T' or dead-end intersection."
We note one minor error in the trial judge's findings in that, upon commenting upon the testimony of Mose Scott, he stated that the latter had looked in his rear view mirror and had seen a car about a quarter of a mile away. The transcript reflects that actually Mose Scott testified that he looked into his rear view mirror and saw no automobile behind him, but that he did see a car approaching from the north about a quarter of a mile away. Aside from this insignificant error, however, the trial judge's findings are eminently correct. He went on the hold that the sole cause of the accident was the negligence *322 of Scott in turning to the left without indicating his intention so to do and without taking the necessary precautions to ascertain that said maneuver could be made in safety. The cases are legion which establish the obligation and duties of one who intends to make a left turn and the record in this case abounds with testimony showing that Scott completely failed to act as required by law under the circumstances.
The plaintiff urged in the Court below and has re-urged in his brief in this court that Kirkwood violated the law in attempting to pass another vehicle from the rear at an intersection as provided by LSA-R.S. 32:233(E). As seen above, the road to the west was only a narrow, unmarked graveled lane or road, and, this being the case, the provisions of LSA-R.S. 32:233(E) are not applicable. See, for instance, the holding in the case of King v. Willis, La.App., 75 So.2d 37 and Brown & Williamson Tobacco Corporation v. Baumgardner, La.App., 92 So.2d 107.
Finding no manifest error in the judgment appealed from, the judgment is hereby affirmed.
Judgment affirmed.