152 So.2d 631 (1963)
Frank CRANE et al., Plaintiffs-Appellants,
v.
Clarence LONDON et al., Defendants-Appellees.
No. 9916
Court of Appeal of Louisiana, Second Circuit.
April 1, 1963.
*632 Nelson & Gray, Shreveport, for Frank Crane, Mrs. Mary Louise Crane, Thomas Motor Freight, Inc., and The Travelers Indem. Co., plaintiffs-appellants.
Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for Clarence London, S. H. Bates, Jr., and Canal Ins. Co., defendants-appellees.
Before GLADNEY, AYRES, and BOLIN, JJ.
AYRES, Judge.
This is an action in tort wherein plaintiffs seek to recover damages sustained in a motor vehicle collision of June 5, 1959, on U. S. Highway 84, about nine miles west of Mansfield. Involved in the collision were a Ford car of the Thomas Motor Freight, Inc., driven at the time by Frank Crane, who was accompanied by his wife and minor son, and a Ford log truck of S. H. Bates, *633 Jr., driven by his employee, Clarence London.
Plaintiffs are Frank Crane and his wife, Mrs. Mary Louise Crane, and the Thomas Motor Freight, Inc., and the latter's insurer, The Travelers Indemnity Company. The defendants, in addition to Bates and London, are the former's insurer, the Canal Insurance Company.
Plaintiffs Thomas Motor Freight, Inc., and its insurer seek to recover property damage sustained in the accident to the automobile. Mrs. Crane seeks to recover damages for personal injuries sustained by her. Frank Crane not only seeks to recover damages for personal injuries sustained by him but also for hospital and medical expenses incurred in the treatment of himself and his wife, as well as the loss of his wife's earnings.
The trial court concluded that Clarence London was guilty of negligence in attempting a left turn without having first ascertained that the maneuver could be made in safety. Crane was held contributorily negligent in failing to give an audible warning signal of his intention to effect a passing movement, or to have his vehicle under control, or to maintain a proper lookout. Accordingly, judgment was rendered in favor of the plaintiff, Mrs. Mary Louise Crane, against the defendants, in solido, for the sum of $5,000.00. The demands of the other plaintiffs were rejected. All plaintiffs have appealed from the judgment. The defendants, in answering the appeal, pray that the judgment appealed be amended by rejecting the demands of Mrs. Crane.
The facts relating to the occurrence of the accident may be summarized. The highway where the incident occurred is of a 2-lane asphalt or black-top surface. For an appreciable distance in both directions from the scene of the accident, the highway is straight. Other than for the highway surface being wet, there were no unusual atmospheric conditions prevailing during the midmorning when the collision occurred. Both vehicles were proceeding westerly, the truck in the lead at about 35 m. p. h., with the automobile trailing at some distance. Due to its greater speed, the automobile, however, overtook the forward vehicle at a distance of approximately 400 feet beyond the top of a hill. London attempted to make a left turn off the highway into a local road, whereupon Crane, who had already begun a passing movement, crashed into the truck. The right front of the car struck the left rear dual wheels of the truck.
Thus, immediately preceding the accident, the truck was proceeding in the righthand traffic lane, the car, in the left lane for a passing movement. As the car approached the truck, and when a distance of only 24 feet separated them, according to Crane's estimate, the driver of the truck suddenly swerved his vehicle into the left lane for the purpose of effecting a left turn. Crane responded by immediately sounding his horn and applying his brakes. His car, nevertheless, skidded, as aforesaid, into the left rear of the truck.
The testimony is conflicting as to whether London gave a signal indicative of his intention to make a left turn. London and a schoolboy accompanying him testified that such signal was given. This fact is emphatically denied by Crane who testified as to his constant surveillance of the truck as it proceeded ahead. From their preoccupation with other matters, neither Mrs. Crane nor the son could detail the manner of the occurrence of the accident.
The testimony leaves no basis to question the correctness of the conclusion reached by the trial court that London was guilty of negligence constituting a proximate cause of the accident. If he gave a signal of his intention to make a left turn, the record does not disclose when or where such signal was given.
Principles are well established in the jurisprudence, as well as by statute, that a motorist, before turning from a direct line upon a highway, shall first see that such movement can be made in safety; that *634 whenever the operation of any other vehicle may be affected by such movement, the motorist shall give a signal plainly visible to the drivers of such other vehicles of his intention to make the turn. Responsibility for ascertaining that a left turn across a highway can be safely made is placed upon the motorist attempting the maneuver. It is not sufficient that the motorist be content with merely holding out his hand or putting on his directional-signal indicator; he should look before turning to see that such movement can reasonably be made in safety.
London admitted that, for some distance and for some appreciable length of time, he never looked back before attempting his left turn, although he was aware of the presence of plaintiff's vehicle approaching from the rear. His failure to thus keep and maintain a proper lookout and to ascertain that a left turn could be made in safety, before proceeding with his turn, was negligence constituting a proximate cause of the accident.
The remaining issues relate to a question of Crane's contributory negligence. In the establishment of such fact the defendants have the burden of proof. The plea of contributory negligence is based upon the contention that Crane attempted a passing movement at a road intersection without sounding his horn as a warning of his intention to pass and that he failed to maintain a proper lookout or to keep his vehicle under control.
We are in accord with the trial court's exoneration of plaintiff of the charge that he attempted a passing movement at an intersection. The intersecting road is a narrow dirt road neither posted nor marked by signals or lines indicating a no-passing zone. The road was not an intersecting highway within the intendment and purpose of the statute (LSA-R. S. 32:233, subd. E), prohibiting the overtaking and passing of motor vehicles at intersections. Dukes v. Kirkwood, La. App. 1st Cir., 1958, 105 So.2d 318; Brown & Williamson Tobacco Corp. v. Baumgardner, La.App. 1st Cir., 1957, 92 So.2d 107; King v. Willis, La.App. Orleans, 1954, 75 So.2d 37; Dudley v. Surles, La. App. 2d Cir., 1942, 11 So.2d 70.
The charge that Crane's failure to sound his horn indicative of his intention to effect a passing movement constituted a proximate cause of the accident is likewise without merit. The charge relates not to Crane's failure to sound his horn but to his failure to timely give such a warning signal, as both Crane and London testified that plaintiff's horn was blown. The failure as thus contended is, however, a matter of no importance, as, under the facts and circumstances of this case, an absolute failure to sound the horn could not be construed as negligence on the part of the driver of the following vehicle. The statute (LSA-R.S. 32:233, subd. B), directing that the driver of an overtaking vehicle give audible warning of his intention before attempting to pass a vehicle proceeding in the same direction, does not require that the horn of every vehicle be sounded whenever their drivers intend to pass a vehicle which is already sufficiently far to the right of the highway to permit the passing. The purpose of sounding the horn is not to warn the forward vehicle not to turn left, but is to give the overtaking motorist the right to require the vehicle ahead to swerve to the right to afford a sufficient path in which the overtaking vehicle may pass. Babineaux v. Sims, La. App. 1st Cir., 1959, 111 So.2d 848; Service Fire Ins. Co. of N. Y. v. Indiana Lumbermans Mut. Ins. Co., La.App. Orleans, 1959, 111 So.2d 358; Benenate v. Brooks, La.App. Orleans, 1957, 95 So.2d 757; Sanders v. Hisaw, La.App. 1st Cir., 1957, 94 So.2d 486 (writs denied); Martin v. Globe Indemnity Co., La.App. Orleans, 1953, 64 So.2d 257; De La Vergne v. Employers Liability Assur. Corporation, La.App. 1st Cir., 1941, 4 So.2d 66 (writs denied); Cantrell v. H. G. Hill Stores, La.App. Orleans, 1940, 193 So. 389.
*635 The evidence establishes, as we have heretofore pointed out, that, at the time plaintiff started to pass defendant's truck, the latter was in its right-hand lane. Thus, under the authorities cited, it was not necessary for plaintiff to sound his horn or to forewarn defendant of his intention to pass, since plaintiff was in a lane to the left of defendant's traffic lane and the passage did not require that defendant move to the right in order to afford a clear path for the passing movement of plaintiff's vehicle.
A sudden turn of a vehicle, without adequate warning of the driver's intention, from its proper lane of travel across the path of a vehicle in a passing lane has been many times held to constitute the proximate cause of an accident resulting from such a maneuver, notwithstanding the failure of the passing motorist to sound his horn. Sanders v. Hisaw, supra; Martin v. Globe Indemnity Co., supra; Sonnier v. Broussard, La.App. 1st Cir., 1950, 44 So.2d 339; Great American Ins. Co. v. New Amsterdam Casualty Co., La.App. 1st Cir., 1943, 15 So.2d 241; Cantrell v. H. G. Hill Stores, supra.
Defendants, nevertheless, rely upon the principle that a following motorist who makes a sharp passing maneuver without proper lookout or with disregard of possible danger ahead of him is guilty of negligence. Reliance for support of this contention is placed in the following cases: Faulkner v. Ryder Tank Lines, Inc., La. App. 2d Cir., 1961, 135 So.2d 494 (writs denied); McCallum v. Adkerson, La.App. 2d Cir., 1961, 126 So.2d 835; Thomas v. Barnett, La.App. 2d Cir., 1959, 116 So.2d 330 (writs granted); 240 La. 363, 123 So.2d 87; Paggett v. Travelers Indemnity Company, La.App. 2d Cir., 1957, 99 So.2d 173.
In Mitchell v. National Surety Corporation, La.App. 2d Cir., 1963, 149 So.2d 213, 217, we had occasion to point up the distinguishing facts and circumstances in cases such as are contained in the instant case from the cases cited. For instance, we there stated:
"Since counsel relies strongly upon the authority of Thomas v. Barnett and McCallum v. Adkerson, we point out that in Thomas v. Barnett there was a sharp passing maneuver and this court and the Supreme Court concluded that the overtaking passing motorist, Thomas, was guilty of contributory negligence in not assuring himself that he could safely pass Barnett's truck. A close examination of the facts of this case show that the court held Thomas should have recognized that plainly visible gravel loading operations were being conducted on the left side of the highway, that Barnett would be preparing to turn left in order to reach that destination, and that Thomas was wrong in anticipating Barnett would turn right instead of left. The case, therefore, is readily distinguishable from the one at bar. McCallum v. Adkerson, supra, likewise must be considered inapposite, for in that case McCallum was intent upon passing a number of vehicles, and this court held he should have surmised from the slowing down of the several vehicles ahead that it was the intention of the driver of the lead vehicle to make a left turn."
Neither does the record substantiate defendants' contention that plaintiff driver failed to maintain a proper lookout or to keep his vehicle under control. We are impressed that plaintiff was most vigilant and alert.
We conclude that the defendants have not, by a preponderance of the evidence, established plaintiff Crane's contributory negligence; and, therefore, that the sole, proximate cause of the accident and the damages and injuries resulting therefrom was the failure of defendant London to keep and maintain a proper lookout or to ascertain, before attempting the left turn, that such movement could be made with reasonable safety.
*636 Finally, for consideration are questions relating to the quantum of the awards for the damages and injuries sustained by the plaintiffs. The findings of the trial court as to Mrs. Crane's injuries were contained in the following excerpt from its written opinion:
"Immediately after the impact, Mrs. Crane stepped out of the automobile on the right side and discovered that her left ankle was injured to the extent she could not walk. She and her husband were taken to the Curtis Clinic in Mansfield, where she was given sedatives. Later that day she went to Dallas, Texas. The next day she was seen by Dr. Robert W. Grace, who hospitalized her for eight days. He placed her foot and ankle in a cast, which she wore for about six weeks. After the cast was removed, Mrs. Crane was referred to the Baylor University Medical Center for physical therapy, which treatment was continued, daily at first, and less frequently later until about January 14, 1960. At that time, Dr. Grace, who had been seeing Mrs. Crane from time to time found what he thought was some inflammatory reacton in her ankle; and he concluded she should see an orthopedic surgeon. He referred her to Dr. B. C. Halley, Jr., an orthopedic surgeon, who first saw Mrs. Crane January 22, 1960. Dr. Halley found an osteochondral fracture, which consisted of a fragment of a bone underlying the medical aspect in the left ankle. He first tried treatment with cortisone and other medication; but when his treatment failed to relieve the condition, he resorted to surgery, May 6, 1960. Mrs. Crane was hospitalized thirteen days as a result of the surgery. The surgery resulted in some improvement of Mrs. Crane's condition, but she is still unable to do any prolonged walking or standing without pain, soreness and swelling of her ankle. There is some shortening of the heel cord, and limitation of motion in her ankle. She cannot wear flat heels, or walk barefooted. Dr. Halley testified that Mrs. Crane's disability is permanent, in his opinion; and that the joint, the situs of the surgery, is subject to degenerative, and arthritic changes. In addition to the injury to left ankle, Mrs. Crane complained of injuries to her left hip, both knees, and right ankle, but these injuries seem to have been of minor consequences, and only temporary in nature."
We are of the opinion that the award is insufficient, considering Mrs. Crane's permanent disability and the pain and suffering that she will, in all probability, be compelled to experience. She was 40 years of age at the time of the trial and had a life expectancy of 28.18 years. There is a permanent disability, despite surgery. The injuries have subjected her to degenerative and arthritic changes, the pain and suffering from which will, in all probability, increase in intensity with the passage of time. An award of $7,500.00, we think, is reasonable.
With reference to Crane's injuries, we may point out that the steering wheel struck him in his left side and ribs, and on the head and mouth. Several teeth were knocked out and a severe laceration was sustained to his lower lip, extending completely through the lip. On reaching a clinic in Mansfield, Crane's lip was sutured, both inside and outside. His teeth were so loosened that the doctor removed them. The day following the accident, Crane was seen at his home in Dallas by his family physician, whose examination revealed lacerations and swelling of the lower lip, two broken teeth, and pain over the left chest wall. It was thought that Crane had sustained a fractured rib. The roots of the broken teeth were later removed and bridgework inserted. Checkups by the family physician followed on four occasions, extending to July 7, 1959. About a month following the accident, Crane began to experience *637 pain in his back while driving, which he does extensively in his work. On August 1, 1959, after examination, the family physician was of the opinion that Crane had sustained an acute sacroligamentous strain; whereupon he was referred to an orthopedic surgeon who felt that Crane had most likely sustained a muscular strain or an aggravation of a strain. He was placed on an exercise program. Nevertheless, at the time of trial, he described his condition as painful, particularly from time to time in driving.
We think an award of $2,500.00 is reasonable for the physical pain, suffering, and disability experienced by Crane, and for the loss of his teeth.
For medical and dental treatment, Crane incurred an expense of $525.25. Medical and hospital expenses incurred on behalf of his wife totaled $1,506.97. Travel expenses in the sum of $157.40 were incurred in making various visits for medical attention and treatment. The expense of the necessary repairs to the car owned by Thomas Motor Freight, Inc., aggregated the sum of $527.34, $100.00 of which was paid by it and $427.34 by its insurer.
Therefore, for the reasons assigned, it is Ordered, Adjudged, and Decreed that the judgment in favor of Mrs. Mary Louise Crane be amended by increasing the award to $7,500.00; and
It is further Ordered, Adjudged, and Decreed that the judgment appealed, so far as it rejects the demands of the other plaintiffs, be, and the same is hereby, annulled, avoided, reversed, and set aside; and
It is now Ordered, Adjudged, and Decreed there be judgment in favor of the plaintiff, Frank Crane, for the full sum of $4,532.22; in favor of the plaintiff, Thomas Motor Freight, Inc., for the full sum of $100.00; and in favor of plaintiff, The Travelers Indemnity Company, for the full sum of $427.34, against the defendants, Clarence London, S. H. Bates, Jr., and Canal Insurance Company, in solido, with 5% per annum interest on each of said amounts from judicial demand until paid, and for all costs including the cost of this appeal.
Amended and affirmed in part, and reversed and rendered in part