182 So.2d 735 (1966)
James F. STERLING et ux., Plaintiffs-Appellees,
v.
James S. RITCHIE, Jr., et al., Defendants-Appellants.
No. 6529.
Court of Appeal of Louisiana, First Circuit.
January 24, 1966.
Rehearing Denied February 28, 1966.
*736 Arnold J. Gibbs, Baton Rouge, for appellants.
Robert J. Vandaworker of Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for appellees.
Before ELLIS, LANDRY, REID, BAILES, and F. S. ELLIS, JJ.
ELLIS, Judge.
James and Alice Sterling filed this suit against James Ritchie, Mrs. Hilda Puppera and Liberty Mutual Insurance Company, asking for damages for personal injuries to them both and to recover on behalf of the community, the medical expenses and property damage allegedly suffered as a result of a collision when he turned left from the north bound, or right, lane of traffic on Highway 61 across the south bound, or left, lane of traffic in order to enter the driveway and his car was struck on the left side about the rear door by a car owned by James S. Ritchie, Jr., and driven by Hilda P. Puppera, which was also being driven in the north bound lane of Highway 61 and just prior to the collision had steered into the south bound or passing lane in order to pass the Sterling automobile. Liberty Mutual Insurance Company filed a third party demand against James Sterling asking for judgment against him for one-half of any judgment recovered by Alice Sterling against Liberty Mutual on the theory that he was a joint tort feasor.
The trial judge found Mrs. Puppera and James Sterling negligent and contributorily negligent, respectively, and, therefore, dismissed James Sterling's claim for damages for his own personal injuries and for the recovery of medical expense and property damage on behalf of the community. Judgment in favor of Alice Sterling was rendered in the amount of $2750.00 plus legal interest and costs against Liberty Mutual and Mrs. Puppera in solido. Plaintiff's demands against James Ritchie were dismissed. The trial court also rendered judgment in favor of Liberty Mutual and Mrs. Puppera and against James Sterling in an amount equal to one-half of the judgment rendered in favor of Alice Sterling.
From that decision Liberty Mutual and Hilda Puppera have appealed, and the plaintiffs have answered the appeal praying for a reversal of the decision of the lower court as to James Sterling and for an increase in the award granted to Alice Sterling.
The accident occurred when James Sterling attempted to execute a left turn into his driveway off of U.S. 61 and Mrs. *737 Puppera was in the act of passing his automobile at the same time and place. The right front and right fender of the Puppera car struck the two door Sterling Buick just forward of the latter's left rear wheel. When Mrs. Puppera was approximately 40 feet from the Sterling automobile, it started its left hand turn across the highway and she realized that a collision was unavoidable and steered here automobile to the left which resulted in the right front and right fender of her car striking the Buick. Had she not done this she would probably have struck it more to the front. The Puppera Chevrolet was traveling at approximately 30-35 miles per hour and the Sterling Buick at about 5-10 miles per hour. The Sterling property is bounded on the south by Flicker Street, which is an unimproved narrow street proceeding west from the highway. The Sterling driveway is located on the south portion of his property just north of Flicker Street, which does not cross Highway 61 but forms a T intersection. Slightly south of Flicker Street is Central Street which enters Highway 61 from the east and it was therefore contended in the lower court and in this court that Mrs. Puppera was engaged in a prohibited passing maneuver at two intersections by the provisions of R.S. 32:76 subd. A(2).
Counsel for defendant has referred us to Dukes v. Kirkwood, La.App., 105 So.2d 318, and Crane v. London, La. App., 152 So.2d 631, as standing for the proposition that the joinder of roadways of the type involved in this case are not intersections within the meaning of R.S. 32:76 subd. A(2) which prohibits the overtaking and passing of vehicles at intersections. While the lower court held that Mrs. Puppera was negligent in attempting to pass Sterling in the vicinity of an intersection, we do not believe it is necessary to pass upon the applicability of the Kirkwood and London cases as the Puppera driven Chevrolet was not engaged in any accident with an automobile entering Highway 61 from Flicker Street nor with one turning left across Highway 61 in order to enter Flicker Street. As far as this case is concerned the violation or disregard of the provisions of R.S. 32:76 subd. A(2) had no causal connection with the collision. Sterling had no intention of turning into Flicker Street as his driveway was beyond Flicker Street, although it is true that its south boundary was just to the north of the north boundary of Flicker Street. This case involves a left turn by an automobile across the highway into a private driveway which should be adjudged as if it were in the middle of the block or 100 feet north of a street intersection. There is no legal prohibition which forbids a motor vehicle from passing another at a private driveway.
There is positive testimony in the record by plaintiff driver that his left hand turn signal was on and operating prior to the time he made his turn across Highway 61. However, the defendant driver stated that she never did see this signal. Shortly after the accident an investigating officer tested the turning lights and they were operating. There is also testimony that there were two trucks following the plaintiff's automobile and behind these two trucks was the defendant driven automobile. As opposed to this testimony, the plaintiff driver stated that before he began his left turn he looked in his rear view mirror and saw traffic about a block to his rear but did not recognize it as a truck or as defendant's car. The defendant driver, Mrs. Puppera, stated that she did not see any trucks or remember passing any trucks after she pulled out to make her turn but there could have been some to her rear. In view of the testimony we do not believe it has been definitely established that there were two trucks immediately to the rear of the plaintiff driver and in front of the defendant driver prior to the accident. We are convinced, however, that the signal lights on the plaintiff driver's automobile were in order and operating prior to his left turn. However, we are in accord with the finding of the trial judge as stated in his oral reasons that the plaintiff driver did not see the automobile driven by Mrs. Puppera *738 when he looked in his rear view mirror because it had already pulled out into the passing lane and could not be observed in a rear view mirror but had plaintiff driver also looked to his rear without the aid of the mirror he would have observed the defendant driver in the passing lane. Mrs. Puppera admitted that there was nothing to keep her from seeing the lights and she was aware of the Buick when she began passing and we find no justification for her failure to observe the turn indicator lights on the plaintiff's Buick and her failure to do so was a proximate cause of the accident. Had she seen the lights, and she is charged with having done so, it immediately became her duty to take action by sounding her horn as a warning to the driver of the Sterling automobile and applying her brakes and/or pulling back to her right into the north bound traffic lane to the rear of the Sterling automobile.
We are equally convinced that James Sterling was contributorily negligent. Mrs. Puppera had evidently been in the right lane for some distance and if the two large trucks described by an eye witness as "overnight" trucks were in front of her car prior to the passing and to the rear of the Sterling automobile she was engaged in a passing maneuver for quite some distance prior to the accident and, if as we believe, the two trucks were not between the Puppera and plaintiff's vehicles when she started her passing maneuver, in either event, she should have been observed by the plaintiff driver before he began his left turn. The driver of a vehicle about to execute a left turn has the duty of ascertaining that the movement can be made with reasonable safety. He may assume that following drivers will observe all duties imposed on them by law or common sense, "such as that the following traffic is proceeding within the speed limit and will not pass at an intersection where passing is prohibited; and, moreover, that the drivers of such vehicles are keeping a proper lookout." Breland v. American Insurance Company, La.App., 163 So.2d 583, 584. However, once it becomes apparent to a motorist about to execute a left turn that a following vehicle is engaged in a passing maneuver in close proximity to his own vehicle and at an intersection, he can no longer rely on the presumption. In addition, considering the facts of this accident, having failed to see the overtaking vehicle before executing the left turn amounts to a clear breach of the duty imposed on a left turning driver to ascertain that the maneuver can be completed with reasonable safety.
Plaintiff has pleaded the doctrine of last clear chance. It is inapplicable to the facts of this case, however, for that doctrine can only apply where the defendant in fact had a chance to avoid the accident after realizing that an accident was imminent. James Sterling entered the south bound lane at a time when Mrs. Puppera was 20-40 feet away, hardly a sufficient distance to call for the application of the doctrine of last clear chance.
It is always difficult to translate pain, suffering, and bodily injury into a fixed dollar value. Dr. John L. Lewis, who examined Alice Sterling in the emergency room of Our Lady of the Lake Hospital shortly after the accident, diagnosed her injuries as "contusions of the left face and forehead areas, contusion of the left chest, left knee, concussion." She remained in the hospital from June 17 until June 28.
Dr. Howard Hansen who first examined Alice Sterling on July 1, 1963, did not disagree with that diagnosis, estimating a complete recovery period of approximately twelve weeks. Dr. Hansen again examined the plaintiff on October 17, 1963, at which time plaintiff was hysterical, refused to take medication, and complained of coughing up blood, a complaint not confirmed during the two days which she spent in the hospital on this occasion. It was Dr. Hansen's impression that the plaintiff was psychoneurotic and that the symptoms in October were unrelated to the automobile accident the preceding June.
*739 The trial judge allowed $1750.00 for the knee and chest injuries and an additional $1000.00 for whatever emotional problems may have followed from the accident. It was the trial judge's impression that, with regard to her injuries, "the mountain that she makes out of them ... should not produce the feeling she has toward her family and others."
We are of the opinion that the trial judge did not abuse his discretion in translating injury into dollars and, accordingly, the award of $2750.00 will not be disturbed.
As to a third party demand of Liberty Mutual Insurance Company against James Sterling, we believe that the trial judge was correct in giving judgment in favor of Liberty Mutual Insurance Company against James Sterling for an amount equal to one-half of the judgment recovered by Alice Sterling against Liberty Mutual and Mrs. Puppera. This result is clearly dictated by Smith v. Southern Farm Bureau Casualty Insurance Company, 247 La. 695, 174 So.2d 122.
Judgment affirmed.