76 So.2d 120 (1954)
James Lee BECK et ux., Plaintiffs-Appellants,
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant-Appellant,
Coca-Cola Bottling Company of Shreveport, Inc., Defendant-Appellee.
No. 8226.
Court of Appeal of Louisiana, Second Circuit.
October 29, 1954.
Rehearing Denied December 10, 1954.
Writ of Certiorari Denied February 14, 1955.
*121 Booth, Lockard, Jack & Pleasant, Shreveport, for plaintiffs-appellants.
Simon & Carroll, Shreveport, for defendant-appellant.
Blanchard, Goldstein, Walker & O'Quin, Shreveport, for appellee.
HARDY, Judge.
This is a suit in which plaintiff husband, as head and master of the community, seeks recovery of medical expenses and loss of wages by his wife, and plaintiff wife claims damages for personal injuries. The defendants are the United States Fidelity & Guaranty Company, liability insurer of Big Chain Stores, Inc. of Shreveport, and the Coca-Cola Bottling Company of Shreveport, Inc. After trial by jury, responsive to its verdict, there was judgment in favor of plaintiff husband in the sum of $2,500 and in favor of plaintiff wife in the sum of $15,000 against United States Fidelity & Guaranty Company, and further judgment rejecting plaintiff's demands against Coca-Cola Bottling Company. From this judgment defendant, United States Fidelity & Guaranty Company, has appealed, and plaintiffs have appealed from that portion of the judgment rejecting their demands against the Coca-Cola Bottling Company. Plaintiff husband has further answered the appeal of defendant, United States Fidelity & Guaranty Company, seeking an increase in the amount of the judgment rendered in his favor to the sum of $7,500.
This action arises from an accidental injury sustained by the plaintiff wife, Mary Lois Ames Beck. At or about 12:30 p. m. on August 1, 1953, Mrs. Beck, accompanied by her husband, was engaged in doing the family marketing in one of the grocery establishments operated by the Big Chain Stores, Inc. in Shreveport; an employee of Big Chain, Forest Cooper, was occupied in stacking six bottle cartons of Coca-Cola on the display rack in the store some fifteen feet removed from the point at which Mrs. Beck was shopping; while removing one of the Coca-Cola cartons from a wooden container on a hand truck and placing same upon the display rack, one of the bottles in some manner became dislodged from the carton, fell to the floor and was shattered by the resulting explosive breaking of the bottle; a shred of glass, propelled by the force of the explosion, entered the left eye of Mrs. Beck, inflicting a serious wound to said member.
Relying upon application of the doctrine of res ipsa loquitur plaintiffs charged defendant, United States Fidelity & Guaranty Company, as insurer of Big Chain Stores, and the Coca-Cola Bottling Company with the negligence which was the cause of the accident and the resulting injury to Mrs. Beck. It is interesting to note that both defendants concede plaintiffs right to recovery but each points an accusing finger at the other as being the party guilty of negligence. As a result we are here confronted not with the necessity of determining plaintiff's right to recovery but, rather, with a determination of liability on the part of one or both of defendants, and with the further *122 duty of reviewing and determining the quantum of recovery by the respective plaintiffs.
On behalf of defendant, United States Fidelity & Guaranty Company, it is contended that the Coca-Cola Bottling Company was guilty of the negligence which was the proximate cause of the unfortunate accident, which contention is based upon the claim that the pasteboard carton containing the bottle which fell therefrom was either torn or deteriorated to such degree and extent that the bottle dropped to the concrete floor as the carton was being lifted by Big Chain's employee who was himself free from any actionable negligence in connection therewith.
Conversely, it is urged by the Bottling Company that the carton was free from any defect and that the bottle was dislodged from the carton by the negligence of Big Chain's employee.
The facts developed in connection with these respective charges show that, according to custom, deliveries of bottled Coca-Cola were made semi-weekly by the salesman truck driver of the Bottling Company to the Big Chain store. At the time of each delivery the Bottling Company employee, exercising his own discretion as to the amount of bottled goods to be delivered, replenished the display rack with cartons of bottled Coca-Cola and stocked the storeroom with an adequate supply of wooden cases of the product, each of which contained four six-bottle cartons. It was the custom of the store management, between delivery dates by the Bottling Company truck, to transfer such supplies of Coca-Cola from the storeroom to the display rack, which transfer was effected as a matter of usual procedure by loading a flat bottomed fourwheeled truck or carriage with wooden cases from the stockroom, which loaded cart was then wheeled to a point in close proximity to the display rack where the cartons were then removed, apparently one by one, from the wooden cases on the truck and placed upon the display rack.
In meeting and attempting to refute the imputation of negligence the Bottling Company introduced detailed testimony, the effect of which was to establish its systematic and careful inspection of all carton containers of its bottled product and delivery thereof in good condition to the Big Chain stores.
Similarly, the defendant insurer of Big Chain attempted to exculpate the store's employee from any negligent action in connection with the handling of the transfer of the containers of Coca-Cola from the storeroom to the display rack.
Turning to a consideration of specific testimony bearing upon these respective defenses, we note that both the plaintiff Beck and the Big Chain employee, Forest Cooper, testified that the carton which was being handled by the latter and from which the offending bottle was dislodged, was in noticeably bad condition. Unfortunately, we are unable to give any serious weight to this testimony as constituting convincing evidence on the point. The plaintiff Beck was unquestionably in a highly nervous condition immediately following the serious injury to his young wife, and his testimony in connection with other details establishes the fact that his observation and recollection of physical facts was unreliable in the extreme, a condition which was only to be expected in view of the circumstances. Beck's opportunity for examination of the carton was extremely limited by reason of the fact that he was primarily concerned with his wife's injury and the necessity for immediately procuring medical attention. The testimony of Cooper is also open to objection. He was the individual who was directly involved, and we find, upon close examination, the details of his testimony relating to the condition of the carton fail to carry any degree of certainty which could be regarded as convincing.
However, in the instant case we are completely convinced not by the words of the witnesses who testified but by the muted voice of evidence which was not produced. The store manager, Mr. T. G. Turner, who was tendered as a witness, accompanied the Becks to the hospital, later returned to the store and at that time, according to his testimony, saw the carton which had contained *123 the bottle which was the effective damaging instrumentality, but, and we think significantly, Mr. Turner's testimony is devoid of any reference to the condition of the carton. It is further appropriate to observe that the carton which was, and unquestionably which remained, in the possession and custody of the store employees was not produced. Certainly the carton itself would have been the conclusive proof of its condition. It is further to be observed that two employees of the store were present at the time of the accident but were not called as witnesses.
In the light of these observations we are firmly persuaded that the Bottling Company was free from liability and it follows that the judgment in this respect was correct.
In view of this finding there remains no question as to the sole liability of the defendant insurer of Big Chain Stores and we therefore proceed to a consideration of the only remaining question, which is concerned with the quantum of damages allowed the plaintiffs. Although the allowance to the plaintiff husband was not itemized in the verdict returned by the jury, it is evident that the sum of $599.08 representing expenses for hospital and medical services, etc., established by undisputed evidence, accounts for a portion of the judgment to that extent. It follows that the remainder of the judgment, approximately $1,900, must have been considered by the jury as an allowance for loss of wages. It was established that Mrs. Beck was a qualified registered nurse who had been for some time regularly employed as a head nurse at a local sanitarium at a monthly salary, less deductions, of $235. Anticipating the birth of a child Mrs. Beck applied for and was granted a maternity leave of absence from her duties at the hospital during the month of July, 1952. The child was born in December, 1952 and, according to her testimony, Mrs. Beck intended to return to work in September, 1953. We think it unnecessary to burden this opinion with any detailed comment in this connection because it appears evident to us that the jury which heard the trial of the case in May, 1954, was concerned with making an allowance for loss of wages commensurate with the lapse of time actually involved between September of 1953 and May of 1954. The jury's estimate was reasonably accurate and we think it should not be disturbed as being excessive on the one hand or inadequate on the other.
In the difficult and always highly controversial field of the assessment of damages we preface our discussion with the oft-reiterated pronouncement that with respect to the evaluation of damages each case must be considered on the basis of its own factual circumstances. We are deeply sensible of the able, detailed and extensive citation of authority, by all counsel involved, bearing upon the quantum of damages, but we again point out the fact that there is not, nor do we believe there ever can be, any fixed basis, table or standard which will serve as an accurate index and guide to the establishment of monetary awards in the nature of damages for specific personal injuries.
Adverting to the facts of the instant case, we are here called upon to determine the measure of damages for the serious injuries sustained. Mary Lois Ames Beck, at the time of the accident, was an attractive young woman, twenty-four years of age, in good health, blessed, among the other normal attributes of youth, with perfect vision. Immediately following the accident Mrs. Beck was administered emergency treatment by an eminent eye specialist, then removed to a hospital where she was subjected to an operation involving the suturing of the wound in the left eye. The wound itself, which penetrated entirely into the cavity of the eye, was briefly described in the testimony of the attending eye specialist and surgeon as follows:
"On examination the sclera or the white part of the eye on the left side was gaping open and the vitreous or jell contents of the posterior chamber of the eye was protruding out of this hole."
*124 By far the major part of the rather voluminous record of testimony in the instant case is made up by the examination of medical experts as to the nature of the injury and its probable effect. We cannot conceive that any useful purpose would be served in belaboring the testimony developed pro and con, most of which is of a highly technical and scientific nature completely beyond the ken of the lay mind. We cannot forbear from observing that we always feel a sense of insufficiency in being required to resolve the often diametrically opposed conclusions of equally qualified students and practitioners of the science of medicine. However, in default of the possibility of reconciling these opposed theories, the responsibility of a final determination is imposed upon tribunals of law and it must be considered that their dispositions in such instances are indicated by the practical rather than the scientific aspects of a given question.
A substantial portion of the testimony of the expert medical witnesses was devoted to an effort to ascertain and fix the amount of the vitreous content of the eye which was lost by escape from the vitreous chamber through the penetrating wound. One point upon which these witnesses were agreed was that the measure of permanent and lasting damage and injury was dependent, in large degree, upon the amount of vitreous which had been lost. But on the point as to the actual approximation, that is, whether the amount was substantial or negligible, the experts could reach no firm conclusion. We pretermit any discussion of the loss of fluids, vitreous or aqueous, for any conclusion thereupon would necessarily depend upon a mere estimate or approximation. Of one fact in this connection, however, we can be certain, that some vitreous content of the eye was lost, which loss was irreplaceable and which has and will, to greater or less degree, ultimately produce injurious effects.
Whether or not young Mrs. Beck will ever suffer a retinal detachment, the probability of which is urged by her astute counsel, is to our minds a matter of speculation, with reference to which, unfortunately, we are not convinced, either one way or the other, by the testimony of the medical experts. But these things we do know: That Mrs. Beck endured a period of intense pain and mental agony; that she was confined to the hospital, her head immobilizd, for a period of five days; that because of an acute reaction to an anti-tetanus serum she was again hospitalized for an additional period of five days; that for many weeks she suffered severe pain in the injured eye; that as a result of the accident she was compelledto wear heavy-lensed glasses and is required to undergo frequent re-examination of vision and corresponding changes of lenses; that at the time of trial she certainly suffered specific discomforts and inconveniences, consisting among others of frequent headaches, particularly after sustained periods of reading, difficulty and pain in connection with movement of the eye, particularly in affecting changes in attempted distance perception, black spots before the eye, in short, numerous nagging, uncomfortable and frequently painful experiences which it was indicated will continue, though in lessening degree, over an extended period of time; that by reason of her difficulties in continuous concentrated use of the eyes in reading, or in other activities necessitating corresponding intensive use of the visual faculty, her return to nursing duties was a matter of considerable uncertainty.
The foregoing is a somewhat comprehensive but not an exclusive list of the inconveniences, many of which are of a permanent nature, from which the plaintiff suffers and will continue to suffer as the direct result of the accidental injury. To say that each of them can be compensated for the award of a specific sum, or that all of them can be repaired by the payment of an aggregate amount, would be to advance absurd and indefensible conclusions. The only possible resolution necessitates the fixing of what is, and in reason must be, an arbitrary award, taking into consideration all the details related, together with the factors of economic circumstances and conditions, including the lowered value of the dollar, the ability of the responsible parties *125 to pay, and the living standards and expectations of the injured party.
In the light of the particular circumstances and facts involved in the instant case, we cannot find, on any basis of reason or logic, grounds for concluding that the award of the jury in the instant case was in any degree excessive and therefore subject to reduction.
For the reasons assigned the judgment from which appealed is affirmed at appellant's cost.

On Application for Rehearing.
PER CURIAM.
Counsel for defendant, United States Fidelity & Guaranty Company, vigorously complains in application for rehearing that this court was seriously in error in failing in its opinion to set forth in detail the grounds for liability as against the Big Chain Stores. We made every effort in our opinion on original hearing to define what we regarded as the principal issue tendered by this appeal. In pursuance of this effort we noted in the opinion that learned counsel for both defendants had conceded plaintiff's right to recovery, and, as we thought, the case was therefore disposed by our affirmance of the judgment, inasmuch as the Coca-Cola Bottling Company had been freed of liability by the verdict of the jury below.
Inasmuch as it appears we failed in our initial effort in this respect, we will essay by this means to more emphatically point out the reason for our conclusion.
The following statement was made in brief of counsel for defendant-appellant, United States Fidelity & Guaranty Company:
"Counsel for each defendant advised the jury that they recognized Mrs. Beck's right to recover damages for injuries sustained by her, although each contended the other, and not itself, to be at fault."
In view of counsel's admission as above specifically stated, we thought, and think now, that the elimination of the other defendant, Coca-Cola Bottling Company, from liability, definitely and conclusively resolves the question presented, since the only defendant remaining is United States Fidelity & Guaranty Company as insurer for Big Chain Stores, and counsel cannot now be heard to dispute his own admission as above quoted.
In view of what we regard as the unquestioned propriety of the application of the doctrine of res ipsa loquitur in the instant case, we further point out that the burden was not upon plaintiffs to establish liability, but rather was upon this defendant to free itself from the imputation of negligence. In our opinion defendant signally failed in this respect.
The application for rehearing is denied.