AYRES, Judge.
Defendants appeal from a judgment awarding plaintiff damages for personal *812 injuries, pain and suffering and for loss of wages in the sum of $2,000 and for medical expenses in the sum of $177.80 as the result of a motor vehicle collision. Plaintiff, in answer to the appeal, contends that the award was inadequate and urges that it he increased.
The accident occurred October 30, 1956, between 8:00 and 9:00 o’clock A. M. on State Highway 7, an asphalt surfaced two-lane highway near a private entrance to the Valley Club located on the west side of the highway, about a mile north of Cotton Valley. Improvements at the club were then under way; a building was under construction, and plaintiff, a water well driller, was drilling a water well.
The collision occurred between plaintiff’s CMC pick-up truck loaded with four barrels of water, which defendant was conveying to the drilling site, and defendant’s Chevrolet bread truck driven by the defendant, Travis O. Warner. Both vehicles were traveling in a northerly direction, the bread truck in the rear of plaintiff’s truck. At the time, there was a mist of rain and the road surface was wet and slippery.
Negligence was charged to the defendant driver in his failure to keep a proper lookout or to keep his vehicle under control, in driving at an excessive rate of speed and in attempting a passing movement without signaling his intention to do so. Counter charges of negligence were made against plaintiff in attempting a left-hand turn into the driveway of the Valley Club without giving any signal of his intention to execute such a maneuver and without first having ascertained he could make such movement in safety, particularly in view of the fact that defendant Warner was then in the act of passing.
For consideration on the appeal are two primary propositions: First, the question of defendants’ liability, and, should that issue be determined adversely to defendants, then, secondly, the matter of the quantum of damages.
A detailed discussion of the testimony of the various witnesses appears unnecessary. A brief résumé is deemed sufficient. A thorough review and consideration of the entire record discloses that plaintiff was driving his pick-up truck in a northerly direction at a reasonable and moderate rate of speed of approximately 20 miles per hour, with the intention of making a left turn into the aforesaid driveway on reaching its intersection; that for some distance he had extended his arm and signaled his intention of making a left turn and had also reduced his speed to 10 to IS miles per hour in preparation of entering the drive-way to the left. But before this movement was attempted, defendant, without slacking his speed of 40 to 45 miles per hour, struck plaintiff’s truck. While there is some evidence tending to establish defendants’ truck was at the time of the impact entirely upon its right-hand side of the highway, there is other evidence which tends to establish that the truck was at least partially across the center line of the highway when its right front struck the left rear of plaintiff’s truck. A resolution of this question is immaterial and unimportant in view of the fact it is established that plaintiff’s truck was on its right-hand side of the highway at the time of the accident and that the impact actually occurred in his traffic lane. Plaintiff’s truck, due. to the force of the impact, veered to its right off the highway and came to rest against a power line pole.
The trial court reached the conclusion, in which we concur, that the cause of the accident was that the rear truck was being driven too close to the forward car and at an excessive rate of speed, considering the wet and slippery road surface, the truck’s proximity to plaintiff’s vehicle and that the driver failed to observe the approach of the oncoming car, or the signal given by plaintiff and the slowing down of his vehicle.
That defendants’ driver may have attempted a passing movement, as he con *813 tends, is no justification for his action, which would clearly come within the prohibition of the provisions of the Highway Regulatory Act — -LSA-R.S. 32:233, subd. C, which provides:
“The driver of a vehicle shall not drive to the left side of the center line of the highway in overtaking and passing another vehicle traveling in the same direction, unless such left side is clearly visible and free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in perfect safety. Whenever an accident occurs under such circumstances, the responsibility therefor shall rest prima facie upon the driver of the vehicle doing the overtaking or passing.”
A similar factual situation was before the court in Goynes v. St. Charles Dairy, Inc., La.App., 197 So. 819, 821, wherein the facts were found to be “ * * * that the driver of the plaintiff’s car was proceeding at a slow rate of speed in a northerly direction on the right side of the road; that he was slowing down preparatory to making a left turn into a driveway and that when he was approximately one hundred feet from this driveway the left rear fender of the car he was driving was struck by the right front bumper or right front part of the truck as it attempted to pass; that the driver of the car held out his hand to signal for the left turn”, from which it was concluded “ * * * that the cause of the accident was the fact that the truck was being driven too close to the forward car and at an excessive rate of speed taking into consideration its proximity to this car, together with the failure of the driver to notice the signal and the slowing down motion of plaintiff’s car in preparation for the left turn.”
In support of their position defendants cite Henry v. T. L. James & Co., La.App., 83 So.2d 559; Callia v. Rambin, La.App., 78 So.2d 44, and Nichols V. Everist, La.App., 80 So.2d 199, and contend that plaintiff was negligent, or at least contributorily negligent, in attempting a left-hand turn across a traffic lane without having first ascertained that the movement could be made in safety. However, the instant case is distinguishable from the cases cited in that in the instant case plaintiff had not actually begun or attempted a left-hand turn nor had he veered to his left out of his lane of traffic, but was proceeding therein to reach the intersection into which he was then intending to turn. Preparation only for the execution of the maneuver was made; no actual attempt to turn had begun when plaintiff’s truck was struck in its lane of traffic by defendant’s truck. . •
In Nichols v. Everist, supra, it was held Everist was guilty of negligence in failing to keep a proper lookout, as well as in failing to sound his horn, indicating an intention to pass the Nichols truck. There is no evidence in the instant case from which it could be concluded defendants’ driver gave any signal indicative of his intention to pass the forward truck. Warner had no recollection of giving such a signal and plaintiff heard none.
The conclusion is, therefore, inescapable, both from the facts as established in the record and from defendants’ failure to rebut their driver’s presumption of negligence, that Warner’s negligence constituted a proximate cause of the accident.
Defendants contend, however, that plaintiff, by his failure to observe the approach of defendants’ truck from his rear, was negligent, which negligence constituted a proximate, or, at least, a contributing cause of the accident, whereby he should be barred from recovery. We do not so interpret plaintiff’s acts. Even had he been guilty of negligence in some respects, unless such negligence was a proximate cause of the collision or a contributing cause thereto, he is not barred from recovery. Schick v. Jenevein, 145 La. 333, 334, 82 So. 360; Manceaux v. Hunter Canal Co., 148 La. 93, 86 So. 665; Gauvereau v. Checker Cab Co., 14 La.App. 448, 131 So. *814 590; Bartholomew v. Marquette Casualty Co., La.App., 96 So.2d 235.
In this case plaintiff did not, suddenly or at all, make a left turn in front of the bread truck; nor could it he said he suddenly stopped by merely reducing his speed from approximately 20 miles per hour to 10 to 15 miles per hour. Nor is there any showing that plaintiff suddenly slowed his vehicle or gradually veered to his left in front of defendants’ truck. The evidence does not warrant a finding of negligence on plaintiff’s part constituting either a proximate cause or a contributing cause of the accident.
Finally for consideration is the question of the quantum of damages to adequately compensate plaintiff for the injuries sustained. From the force of the impact of the collision plaintiff received severe and painful injuries, was rendered unconscious, and continued in a semi-conscious state for several hours. Immediately following the accident plaintiff was given first aid by Dr. Pugh of Cotton Valley and then hospitalized at Springhill for a period of eight days while undergoing treatment by Dr. W. R. Garrett. Subsequent to his release from the hospital, plaintiff remained under the treatment of Dr. Garrett and was under his treatment on the date of the trial, November 6, 1957. In the meantime, plaintiff was referred to Dr. Kenneth B. Jones of Shreveport, Louisiana, a specialist in the treatment of eye, ear, nose and throat injuries and diseases, who examined plaintiff under date of March 6, 1957, and was also referred to Dr. Ford J. Macpherson, an orthopedic surgeon of Shreveport, who made an examination of plaintiff July 25, 1957.
Plaintiff sustained a fractured right cheek bone, a broken nose and injuries to his eyes, neck and shoulders. From the testimony of Drs, Garrett and Jones, it is revealed that the pyramid of plaintiff’s nose was torn loose at the junction with the frontal area and displaced backwards. The left nasal bone was markedly depressed and the nose displaced to the right. Internal examination of the nose revealed a marked deviation of the nasal septum blocking the right nasal capacity about 75%, making breathing more difficult. The examination of the eyes revealed there was a definite gap between the right eyeball and lateral wall of the orbit, a fracture of the lower rim of the right orbit, which, with the right malar process, was pushed downward, and an injury to the right inferior oblique muscle. There was also a pronounced double vision due to the fracture involving the lower rim of the right orbit, on looking to the left, either upward or downward. Without glasses, plaintiff’s vision in the right eye was 20/100 and in the left eye 20/50, and, in both, on refraction 20/25. There was also evidence of arteriosclerosis involving the retina of both eyes and a generalized contraction of the visual fields to 25% in each eye. Dr. Jones, however, was unable to account for this condition as arising out of the accident.
Dr. Jones’ findings and conclusions, a résumé of which is given hereinabove, are neither contradicted nor questioned. He knew of no surgical or other treatment that would restore normal function to the right eye, which, due to the fracture of the orbit, could not be elevated to its normal position. Plaintiff was also disfigured due to the fracture of the right cheek bone and the injuries to his eyes and nose. His face was slightly depressed.
Dr. Macpherson, whose examination was limited to orthopedics, was of the opinion that plaintiff sustained a moderate degree of sprain of his neck, superimposed on old arthritic changes, accompanied by pressure on the nerve roots as they emerge out of the side of his neck, which produced plaintiff’s complaint of tingling sensation in the fingers of his hands. Plaintiff experienced a stiff neck, with discomfort which would be relieved in time by the .neck becoming stiffer and more immobilized. Dr. Macpherson was of the opinion *815 plaintiff suffered a slight permanent disability in the body as a whole.
The record establishes that as a result of the accident, plaintiff has experienced a stiffness in his neck and shoulders, a nervous tingling and lack of sensation in his fingers, difficulty in stooping, bending or lifting, a constant watering of his eyes, and a double and restricted vision. Thus, the conclusion is inescapable that he has sustained serious and permanent injuries to his eyes, nose and face, and impaired vision and breathing. The injuries to his eyes were said to be permanent, the injuries to his nose could only be relieved through surgery. Plaintiff has suffered severely and that he now suffers pain, headaches and discomfort is supported by the record. That he has ample cause for such pain and suffering is beyond serious question.
Due to these injuries, plaintiff, although only 57 years of age, has not been able to resume the duties of his former occupation as a driller of water wells except to a very limited extent and then only in a supervisory capacity. We may say, however, that the evidence as to his loss of wages was very meager.
In Beck v. United States Fidelity & Guaranty Co., La.App., 76 So.2d 120, 123, it was recognized there is no fixed basis or standard serving as an accurate index and guide to the establishment of monetary awards in the nature of damages for specific personal injuries, and it was recognized that each case must be considered on the basis of its own factual circumstances. There it was stated:
“In the difficult and always highly controversial field of the assessment of damages we preface our discussion with the oft-reiterated pronouncement that with respect to the evaluation of damages each case must be considered on the basis of its own factual circumstances. We are deeply sensible of the able, detailed and extensive citation of authority, by all counsel involved, bearing upon the quantum of damages, but we again point out the fact that there is not, nor do we believe there ever can be, any fixed basis, table or standard which will serve as an accurate index and guide to the establishment of monetary awards in the nature of damages for specific personal injuries.”
Talcing into consideration the nature and extent of plaintiff’s injuries, the suffering sustained and the discomforts endured, the loss and restriction of vision and the impairment of his breathing, we have concluded that the award is inadequate and should be increased. We deem that $4,-500 is neither excessive nor inadequate, and the judgment appealed will be, accordingly, amended.
Accordingly, the judgment appealed is amended by increasing the award to $4,-677.80 and, as thus amended, is affirmed at appellants’ cost.
Amended and affirmed.