LOTTINGER, Judge.
This is a suit for personal injuries and property damages arising from an automobile accident. The petitioners are Woodrow Pelt, and his wife, Mrs. Woodrow Pelt, who was a guest passenger in one of the vehicles. The defendants are Daymon H. Beams, his insurer, Home Indemnity Company, Mrs. Flora Hughes, and her insurer, the Audubon Insurance Company. The Lower Court awarded judgment in favor of petitioners and against all defendants. All defendants have taken this appeal. The petitioners have answered the appeal requesting an increase in the amount awarded. The record discloses, without contradiction, that the accident occurred on *149 September 11, 1958 at approximately 5:50 o’clock p. m. on U. S. Highway 171, and at a distance of approximately five miles south of Leesville, in the Parish of Vernon, Louisiana. Highway 171 is a main traffic artery running north and south, the construction is of asphalt for a width of twenty-two feet. At the vicinity of the accident, the shoulders of the highway are approximately six to seven feet wide on each side. Prior to the accident it had been drizzling, and, at the time of the impact the highway was wet, and it was either drizzling or raining.
At approximately 5:00 o’clock p. m. Mrs. Woodrow Pelt, one of the petitioners, together with Mrs. Flora Hughes, and Mrs. Emma Davis, all of whom worked at the P-X at Fort Polk, got off from their said work and entered the automobile belonging to Mrs. Hughes in order to return from their work to their respective homes situated in or near Leesville, Louisiana. At approximately the same time, Sgt. Daymon H. Beams completed his daily duties with the U. S. Army and entered his 1950 model Studebaker automobile preparatory to returning to his home at Leesville. On the way home Sgt. Beams stopped to buy gasoline at a filling station which was situated at approximately one-half mile from the scene of the accident. After completing his said purchase, he again entered U. S. Highway 171 and resumed his northerly travel in the rear of the Hughes’ vehicle. Along the way both vehicles were traveling from 35 to 45 miles per hour, and the Beams’ vehicle was the first vehicle to the •rear of the Hughes’ automobile.
After traveling a distance of approximately one-half mile from the said filling •station Mrs. Hughes turned on her left turn signal lights preparatory to turning into the driveway at the residence of Mrs. Pelt so as to let Mrs. Pelt out of the car. Mrs. Hughes testified that she put on her blinkers at a distance of approximately 300 feet from the Pelt driveway, and that the pilot light on the dashboard of her 1957 Chevrolet was blinking and clicking. At the time that she put on the lights she noticed the Beams’ car was a good distance behind her. After putting on her turn indicators, Mrs. Hughes gradually slowed her speed from approximately 35 to 40 miles per hour to approximately 15 miles per hour, during which interval she tipped her brakes so that the brake lights situated on the rear of her car would go on. When she was just a few feet south of the Pelt driveway and preparing to execute her left turn, she was struck violently from the rear by the Beams’ automobile. Mrs. Hughes testified that at the time of the impact she was proceeding at a speed of some 5 to 10 miles per hour and was fully in her right lane, or the east lane, of the highway.
Sgt. Beams did not testify at length upon trial of the matter except for the purposes of a little rebuttal evidence. His version of the accident was introduced into the record by way of deposition. Sgt. Beams testified as to his leaving Camp Polk, stopping to purchase gasoline, and then resuming his journey to the rear of the Chevrolet which he later discovered to be that of Mrs. Hughes. He stated that, after leaving the service station, he traveled at a speed of 35 to 45 miles per hour and at a distance of 50 or 60 paces in the rear of the Hughes’ automobile. Sgt. Beams said that a drizzle had been falling, however, upon reaching a point a block or so south of the impact it started raining heavy and it was necessary for him to turn on his windshield wipers. In his deposition he testified that he had to use some pliers to turn on his windshield wipers when he was a city block or so from the point of impact. The Sgt. further testified that he suddenly noticed both rear brake lights commence shining on the Chevrolet, and he immediately applied his brakes, causing him to skid and crash into the Chevrolet automobile. After applying the brakes, the Studebaker skidded down the highway and the left front wheel and door of his Studebaker collided with the rear right fender of the Chevrolet. Sgt. Beams testified that, *150 at the time he applied his brakes and at the time he struck the Hughes’ vehicle, it was proceeding in a northerly direction along the highway in its proper lane.
The testimony in the case shows that after the impact the Hughes’ vehicle came to rest on the west side of the highway in the ditch, and the vehicle was facing in a southerly direction and was situated north of the Pelt driveway. The Beams’ vehicle, on the other hand, came to rest on the east side of the highway facing in a southwesterly direction. The damage to the Hughes’ car was to the rear, mostly in the center and the right side. The damage to the Beams’ vehicle was to the left fender and left side, the front thereof being undamaged. Because of the inclement weather, no skid marks were noticed by any of the witnesses, and the point of impact could not be detected by the investigating officers. State Trooper Bolton testified, however, that most of the dirt was situated on the east lane of traffic with a small portion thereof on the west.
The record discloses that the three ladies in the Hughes’ vehicle were seated as follows. Mrs. Hughes was driving, Mrs. Davis was seated in the front center and Mrs. Pelt was seated on the right side of the front seat. The impact caused Mrs. Pelt to be thrown to the rear seat and her foot became caught between the two front seats. Mrs. Pelt received injuries for which claim is made in this suit.
The petitioner attempts to show that both Sgt. Beams and Mrs. Hughes were guilty of negligence for which they are legally responsible. They alleged that Sgt. Beams’ negligence consists of following too closely, traveling at an excessive rate of speed and failure to keep a proper lookout and to keep his vehicle under control. They alleged Mrs. Hughes to be negligent in driving at an excessive rate of speed, in not keeping her vehicle under control, failing to keep a proper lookout, and in attempting to make a left hand turn without giving a proper signal in the face of the approaching Beams’ vehicle.
The Lower Court held both Beams and Mrs. Hughes to be negligent, and that the negligence of both of these parties was the proximate cause of the collision and the re-' suiting damages to the petitioners. The Lower Court awarded judgment against all defendants, and in favor of Mr. Pelt, in the amount of $3,064.75, with legal interest on $2,814.75 from date of Judicial demand until paid, said award being for loss of wages of his wife, medical bills and $250 for future medical bills. A judgment was awarded in favor of Mrs. Pelt in the amount of $7,500. From this judgment all the defendants have appealed, and petitioners answered the appeal seeking an increase in amount.
The Lower Court was correct in holding: Sgt. Beams guilty of negligence, and we feel that such negligence was the proximate cause of the accident. The testimony of Sgt. Beams himself indicates that he was following the Hughes’ vehicle too closely, or was not keeping a proper lookout. However, we fail to find any reason for the Lower Court finding negligence on the part of Mrs. Hughes. The evidence reflects that, although Mrs. Hughes was intending to execute a left turn, and had probably turned a little to the right and was preparing to turn to the left at the time of the impact, all of the testimony is to the effect that at the time of the impact she was still proceeding in a northerly direction and was within her right, or proper, lane of traffic. Although it is not clear, it certainly appears by the reasons assigned below, that the only basis for the Lower Court holding Mrs. Hughes negligent was her testimony to the effect that she pulled a little to the right prior to attempting her left turn. This action certainly had no causal connection with the impact. The Lower Court said that Mrs. Hughes violated one of the Rules of the Road relating to drivers intending to make a left turn. That rule is set forth in LSA-R.S. 32:235 which *151 provides that a driver intending to turn to the left at an intersection shall approach in the line of traffic to the right of and nearest the center line of the highway and in turning shall pass beyond the center of the intersection, passing as closely to the right thereof before turning left. The Lower Court further reasons that had Mrs. Hughes observed this provision of law the accident would not have happened. Now Sgt. Beams himself did not testify to the effect that Mrs. Hughes had turned to the right prior to the impact. According to his testimony she was traveling northerly the same as he was. Mrs. Hughes testified that she cut a little to the right preparatory to turning to the left, Mrs. Pelt testified that Mrs. Hughes was starting a left turn when hit, Mrs. Davis testified that they were not quite opposite the driveway and had not yet commenced turning at the time of the impact. Even conceding that Mrs. Hughes did turn slightly to the right in preparing to execute her left turn, we fail to see how this could be held to be a proximate cause of the accident. Furthermore the record discloses that Mrs. Hughes turned on her left turn indicators while she was some 200 to 300 feet before the point of impact. The three ladies in the car all testified to the effect that the pilot light on the dashboard was blinking and that it was clicking. Mr. Pelt, who was standing in the yard, testified that he saw the left turn lights working on the front of the car. Other witnesses testified that the front left turn light was working after the impact. James Daniel Roberson, who testified as an expert mechanic for 1957 Chevrolet automobiles, said that the turn indicator system on the 1957 Chevrolet is of such construction that if the rear turn signal was not blinking, then there would not be enough current following through the blinking system to operate the points and the other lights would not blink, nor would you hear the clicking noise. In other words, if the rear signal was defective, the front signal and the pilot light on the dash would come on but they would not blink, nor would they click. In view of this testimony, we have no alternative but to conclude that the left turn signal had been given by Mrs. Hughes for a distance of 200 to 300 feet prior to the point of impact. The only witness who disputes this is defendant Beams, who the Lower Court held to be guilty of negligence in failing to keep his car under proper control and to keep a proper lookout. Now, considering that Mrs. Hughes had her left turn signal working for a period of some 200 to 300 feet prior to the impact, we feel that it was incumbent upon Sgt. Beams to see this signal and to take the necessary precautions of a reasonable and prudent driver. In Neely v. Cotton Baking Co., La.App., 106 So.2d 811, 814 a similar factual situation was presented to the Court. The Court held that the petitioner was not guilty of negligence, saying:
“In this case plaintiff did not, suddenly or at all, make a left turn in front of the bread truck; nor could it be said that he suddenly stopped by merely reducing his speed from approximately 20 miles per hour to 10 to 15 miles per hour. Nor is there any showing that plaintiff suddenly slowed his vehicle or gradually veered to his left in front of the defendants’ truck. The evidence does not warrant a finding of negligence on plaintiff’s part constituting either a proximate cause or contributing cause of the accident.”
Furthermore, in Rouyer v. Horil, La.App., 83 So.2d 396, 397, in which the lead vehicle did not even give a turn signal prior to being struck by the following vehicle, the Court, finding no negligence on the part of the driver of the lead vehicle, stated as follows:
“The sudden stopping of the lead car without notice, if unexplained, is negligence, but despite this general rule there is imposed upon the driver of the following vehicle the obligation of having his car under such control as to enable him to stop in time to avoid colliding with the car ahead in the event of a sudden stop; however, we *152 do not think that Horil came to a sudden stop in view of the fact that his vehicle was obviously slowing down in preparation for a left turn and his failure to execute the proper signals was not the proximate cause of the accident. The cause thereof was, as the trial judge found, failure of plaintiff to maintain a proper lookout and to keep her car under adequate control.”
There was no signal whatsoever given by the Beams’ car indicating his intention to pass the Hughes’ car, nor did Sgt. Beams testify that such was his intention. The record conclusively shows that the proper left turn signal was given by Mrs. Hughes which resulted in an increased burden of carefulness being imposed upon the driver of the following vehicle. It certainly appears to this Court that the sole and proximate cause of this accident was the negligence of the driver of the Beams’ vehicle in failing to notice the slowing down of the Hughes’ car and the left turn signal of the proceeding car and in failing to take the necessary precautions. By no stretch of the imagination can we find Mrs. Hughes guilty of any negligence which had any causal connection with the accident, and we feel that the Lower Court was erroneous in holding her guilty of such negligence. The facts of this case are very similar to those presented in Goutierrez v. Travelers Insurance Company, La.App., 107 So.2d 847, which involved a rear end collision as the leading vehicle was preparing to execute a left turn. The Court concluded that the driver of the lead vehicle had not yet commenced her left turn, and the cause of the accident was solely the negligence of the following vehicle. Although the following vehicle was driven at an excessive rate of speed, which was not the case here, evidence presently before us certainly shows that the driver of the following vehicle was failing to keep a proper lookout. No negligence has been proved of Mrs. Hughes, and the judgment of the Lower Court will be reversed' in this respect.
As to damages, the Lower Court awarded hospital and medical expenses incurred up to the time of trial in the amount of $993.15, plus future medical expenses which is substantiated by the testimony of the medical experts. The evidence reflects that, as a result of the injuries received, Mrs. Pelt was unable to return to work for a period of forty-five weeks. Her earnings were 98 cents per hour, forty hours per week, which makes a total loss of wages in the amount of $1,764. Although the Lower Court computed her wages at Ninety-nine cents per hour, the testimony of her employer discloses that it was 98 cents per hour. We therefore feel that Mr. Pelt is entitled to judgment in the amount of $3,007.15, of which the sum of $2,757.15 is subject to legal interest from date of Judicial demand, the future medical expenses not being subject to such interest.
The Lower Court found that Mrs. Pelt received general lacerations, bruises and contusions, with a large and painful hematoma on the wall of the abdomen, a separation of two ribs, a moderate to severe whip lash injury, together with injuries to the muscles, ligaments and soft tissues of her low back. The Lower Court also found aggravation of the pre-existing neurosis and a moderate brain concussion. Without delving into the mass of medical testimony it appears that the whip lash injury was of a very slight nature. Mrs. Pelt did receive rather severe injuries to soft tissues, which evidently caused her a great amount of pain, and she was extremely nervous for some period of time after the accident. Most of the findings, however, were subjective which of course adds greatly to the burden of the Courts in assessing a monetary value to the injuries. The testimony of the experts would reflect that Mrs. Pelt was still suffering at the time of the trial, and that she would continue to suffer for some period ranging from a few weeks to several months subsequent thereto. The medical testimony was to the effect that she had no permanent injuries.
*153 The Lower Court awarded judgment in Mrs. Pelt’s favor in the amount of $7,500 for the above injuries. We are unable to find any error in such award and we will maintain same.
For the reasons hereinabove assigned, the judgment of the Lower Court will be amended so as to dismiss this action insofar as defendants Mrs. Flora Hughes and her insurer Audubon Insurance Company; and will be further amended so as to reduce the award to petitioner Mr. Woodrow Pelt to the sum of $3,007.15 of which amount the sum of $2,757.15 will be subject to legal interest from date of Judicial demand; and, as amended, the judgment of the Lower Court will be affirmed. All costs of this appeal will be paid by petitioner.
Judgment amended and as amended affirmed.