HOOD, Judge.
This is a damage suit instituted by Louis R. Records against the Fidelity and Casualty Company of New York, arising out of a motor vehicle collision between a station wagon, owned and being driven by plaintiff, and a dump truck owned by Sunset Farmers Lumber Company and being driven by one of its employees, Plamilton Jones. The defendant was the public liability insurer of the owner of the truck. After trial of the case on its merits, the trial court concluded that plaintiff was barred from recovery because of his own contributory negligence, and accordingly judgment was rendered in favor of defendant rejecting plaintiff’s demands. Plaintiff has appealed from that judgment.
The evidence establishes that the accident occurred on U. S. Highway 167, about two miles south of the Town of Sunset, in St. Landry Parish, at about 5 :00 P.M. on May 14, 1959. The highway at that point was a straight, hard-surfaced, two-lane, heavily travelled thoroughfare, and at the time the accident occurred the weather was clear and the road was dry. The hard- *619 surfaced portion of the highway was 21J4 feet wide, and the shoulders on either side were about 5 feet in width.
Just prior to the accident plaintiff was driving his station wagon in a southerly direction on that highway, and immediately ahead of plaintiff’s vehicle was the insured truck, which also was being driven in a southerly direction. As plaintiff endeavored to overtake and pass the truck, Jones suddenly turned his truck to the left for the purpose of entering a private driveway, and the right front part of plaintiff’s station wagon struck the left side of the truck. As a result of this accident both vehicles were damaged and plaintiff sustained personal injuries.
Plaintiff, who is a trained safety engineer, testified that prior to the accident he was driving about SO miles per hour, that he increased his speed to 55 or 60 miles per hour as he began his passing maneuver, that when he reached a point about 200 feet from the truck the driver turned it suddenly to the left, and that plaintiff thereupon applied his brakes forcefully but was unable to avoid the accident. Plaintiff states that he was in his left lane of traffic and was actually engaged in the passing maneuver when the truck was suddenly turned to its left, and that no turn signals or warnings of any kind were given by the driver of the truck prior to making the turn.
Plaintiff’s testimony is supported by that of Marshal Echols, who was driving an automobile in a southerly direction about 75 or 100 feet behind plaintiff when the accident occurred. Echols testified that when plaintiff entered the left (or passing) lane of traffic, he also followed plaintiff into that lane in order that he too could overtake and pass the truck. He stated that he did not see the driver of the truck give any light or hand signals indicating that he intended to make a left turn prior to the time the turn was made. He conceded that he probably could not have seen the directional light signals on the truck even if they were operating, since plaintiff’s vehicle was between him and the truck, hut he stated that he was able to see the the driver of the truck and that the driver did not give an arm signal.
Jones, the driver of the insured truck, testified that as he approached the driveway into which he intended to make a left turn, he slowed down from a speed of about 25 miles per hour to a speed of about 10 or 15 miles per hour, and that through his rear view mirror he observed plaintiff’s car about 200 or 300 feet behind him in the same lane of traffic. He testified that he then put his directional signal lights into operation and extended his arm to indicate his intention to make a left turn. Just before making the turn, he again looked into his rear view mirror and observed that plaintiff’s car was then approximately 100 feet behind him, and that plaintiff at that time was still on the right side of the road, in the southbound lane of traffic, and had not given any indication that he intended to pass the truck. Jones testified that he then made a sharp turn into the driveway, that as he did so he heard plaintiff’s brakes squealing, and that plaintiff’s car then slid into him. Jones asserts that the collision occurred after his truck had left the highway and while it was crossing a culvert leading to the driveway.
The testimony of the driver of the insur-' ed truck is supported by that of at least four other witnesses. Mrs. Eva Bernard, for instance, was sitting on the porch of her home, which is located about “an acre and a half” (or about 300 feet) north of the driveway where the accident occurred, and she testified that as the truck passed her home its directional light signals were on and the driver had his left arm extended to signal that he was about to make a left turn. John R. Guidry testified that he was standing near the driveway, that he first saw the truck approaching when it reached a point about 50 feet from that driveway, and that he noticed at that time that the directional lights on the front of the truck were blinking and that the driver’s hand. *620 was extended, indicating that the truck was going to make a left turn.
The evidence establishes that plaintiff’s station wagon skidded a distance of 151 feet immediately prior to the time the collision occurred. These skid marks ran in a southeasterly direction from the place where the car began skidding to the point where the collision occurred. Plaintiff testified that his vehicle was in the left, or passing, lane of traffic when the truck first began turning to its left and when plaintiff first applied his brakes. Mrs. Bernard and Mr. Guidry, however, both confirmed the testimony of Jones that plaintiff’s station wagon was in its right lane of traffic and had not started its passing maneuver when the brakes were first applied, and that the vehicle then skidded across the center line into the passing lane. The two State Troopers who investigated the accident also testified that all of the skid marks from the station wagon, including the marks made by the left and right wheels, began in the right lane of traffic, and that they then proceeded in a southeasterly direction across the center line of the highway to a point near the left shoulder of the highway where the vehicles came to rest after the accident. According to the testimony of the State Troopers, therefore, plaintiff could not have been engaged in a passing maneuver at the time he first observed the danger and applied his brakes. Although plaintiff took moving pictures of the scene of the accident immediately after it occurred, these pictures do not show where the skid marks began.
Although the trial judge did not specifically determine whether the driver of the truck was or was not negligent, he did conclude that plaintiff was “partly in the right hand lane when he observed the turning movement of the truck,” and that prior to reaching the point where the turn was made, the driver of the truck gave adequate warning by hand signals and by directional lights that he intended to turn. The trial judge held that plaintiff should have seen these signals in ample time to avoid the accident, and accordingly he found that plaintiff was barred from recovery by contributory negligence.
We think the evidence supports the conclusions reached by the trial court. Since we are convinced that the trial court was correct in holding that plaintiff was con-tributorily negligent, it is not necessary for us to determine whether the driver of the truck was also negligent. For the purposes of this suit we will assume that the truck driver was negligent.
The evidence establishes that the driver of the truck gave adequate warning by hand signals and by directional lights at least 300 feet before the truck reached the point where the collision occurred. Plaintiff testified that he did not see these signals being given, although there was nothing to obstruct his vision or otherwise to prevent him from seeing them. Under those circumstances, we, like the trial court, feel that plaintiff was negligent in failing to see the signals given by the driver of the truck. If he had observed these signals, given long before the turn was made, it is reasonable to assume that the accident would have been avoided.
In Pelt v. Home Indemnity Company, La.App., 1 Cir., 118 So.2d 148, 151, where the driver of a following automobile was held to be negligent in failing to keep a proper lookout, the Court said:
“ * * *. Now, considering that Mrs. Hughes had her left turn signal working for a period of some 200 to 300 feet prior to the impact, we feel that it was incumbent upon Sgt. Beams to see this signal and to take the necessary precautions of a reasonable and prudent driver. * * * ”
In McCallum v. Adkerson, La.App., 2 Cir., 126 So.2d 835, 839, the Court said:
“The testimony adduced at trial of this cause indicates that Adkerson signalled his intention to turn left, and the written reasons for judgment handed down by the lower court accept that fact as established. * * *
*621 “It is our opinion that plaintiff was negligent in attempting to pass, without giving adequate signals of his intention, at a time when the traffic was decelerating in such a manner as to indicate that the lead vehicle was either preparing to turn or experiencing some sort of mechanical difficulty, and in failing to observe and heed the left turn signal given by defendant, which negligence zvas a proximate cause of the accident." (Emphasis added.)
In the instant suit we think plaintiff’s negligence in failing to maintain a proper lookout and to see the left turn signals given by Jones, the driver of the insured truck, constituted a proximate and contributing cause of the accident, barring plaintiff from recovery.
For the reasons herein set out, the judgment of the trial court is affirmed. All costs of this appeal are assessed to plaintiff-appellant.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.