HAMLIN, Justice.
Acting under our supervisory jurisdiction (Article VII, Sec. 11, Louisiana Constitution of 1921, LSA), we granted cer-tiorari to the Court of Appeal, Second Circuit, in order that we might review its judgment[1] affirming a judgment of the trial court rejecting plaintiffs’ demands impersonal and property damages.
Plaintiffs are Ernest Thomas and his employer’s compensation insurer, Liberty Mutual Insurance Company. Defendants are Billy G. Barnett, his employer, Murphy T. Dreher (doing business as Dreher Construction Company), and Dreher’s insurer, Globe Indemnity Company.
This suit is an outgrowth of a collision between an empty gravel truck being driven by Barnett and a pick-up truck being driven by Thomas on U. S. Highway 165 [2] at Gabon, Louisiana, on August 9, 1957, at about 4:00 P. M.
Barnett, who had dumped a load of gravel and was returning to the gravel pit, entered Highway 165 from a gravel road to its east, about 387 feet from the point of collision. His intention was to drive south down the highway a short distance, and then turn left off the highway and proceed across the Missouri-Pacific Railroad" tracks (running parallel with the highway) to a drag line being used to unload gravel' cars and load trucks. Travelling south on Highway 165 and. north of defendant Barnett when he entered the highway were two-pick-up trucks, the first being driven by plaintiff Thomas and the second by a fellow-employee, Edward Monson. Barnett safely negotiated the turn into the highway; Thomas and Monson (approximately-90 feet behind the Barnett truck) decreased their speed to permit Barnett safe-entrance. Thomas then increased his speed (to no more than thirty-five miles per-hour), and when he was approximately two truck lengths behind Barnett he cut to his left and attempted to pass Barnett’s, truck. At the same time, Barnett cut a short distance to the right and then turned to the left on his way to the drag line. An impact took place between the Thomas truck and the Barnett truck, after which the Thomas truck veered into a concrete, sign on the east side of the highway.
As a result of the collision, Thomas suffered severe personal injuries and damage- *89 to his truck. In his petition for damages, he alleged that Barnett was negligent:
“(1) In failing to keep a proper lookout;
“(2) In making a left turn without any warning whatsoever;
"(3) In making a left turn when same could not be done in safety and when the way was not clear of approaching traffic and especially that of plaintiff’s truck;
“(4) In failing to accord to plaintiff Thomas the right of way granted him by law and common prudence;
“(5) In generally failing to exercise that degree of care required by the rules of the road and common prudence ;
“(6) In making a left turn into the side or path of Thomas’ vehicle in such a manner that it was impossible for him to avoid the subsequent collision.”
Defendants denied liability, and alternatively pleaded contributory negligence.
The trial court sustained the plea of contributory negligence, finding that the direct cause of the accident was the negligence of both drivers. It stated:
“The Court feels that the driver of the gravel truck had as much right to believe that the plaintiff would not make a sudden sharp turn into the left lane from immediately behind the gravel truck, as the plaintiff had a right to believe that the defendant was not going to make a left turn with the gravel truck. The plaintiff may have acted with the best of intentions but that does not keep him from being grossly negligent. Very few drivers involved in an accident act with anything but good intentions. Regardless of their intentions they show bad judgment and an utter disregard of the rights of others when cars are operated as the gravel truck and the truck of the plaintiff were operated as disclosed by this record.”
The Court of Appeal, Second Circuit, found that plaintiffs failed to establish the negligence of Barnett as the sole and proximate cause of the collision. It found that both drivers were guilty of negligence; and, that Thomas had a mental fixation that Barnett would turn to the right or west since he cut over to the right before attempting to negotiate the left turn.
Relators contend that the rule of law with respect to contributory negligence applied by the Court of Appeal, Second Circuit, is contrary to that applied by the Court of Appeal, First Circuit, and the Court of Appeal, Parish of Orleans; that the Court of Appeal did not find Thomas guilty of any acts of omission or commission but found that his thoughts contributed to the cause of the accident; that the Court of Appeal did not apply a positive enactment of the statutory law of Louisiana, incorporated in the Revised Statutes as LSA-R.S. 32:235; and, that the Court of Appeal did not follow the law as already announced in the case of Washington Fire & Marine Ins. Co. v. Firemen’s Ins. Co., 232 La. 379; 94 So.2d 295.
We agree with our learned brothers of the Court of Appeal that the evidence adduced herein is in hopeless conflict.[3]
*90 Plaintiff Thomas’s testimony is to the effect that he blew his horn before attempting to pass the Barnett truck; and, that even though he was directly behind the Barnett truck, Barnett was in his right or west lane of traffic and gave no indication of his intention of turning left. His testimony is supported by that of his coworker, Edward Monson, whose view of the highway was undoubtedly impaired by the Thomas truck.
Defendant Barnett testified that when he approached the intersection of U. S. Highway 165, he saw the two pick-up trucks north of him. After negotiating the turn from the gravel road into the highway, he observed the Thomas truck from his mirror and presumed that he had ample space to make a left turn. He said that he signaled his intention to turn by holding his left arm out of the cab of his truck and by operating his directional blinkers. He stated that after the accident he checked his blinkers at the request of a State Trooper and they were still on. He emphatically denied seeing the Thomas truck in the passing lane; he also denied hearing the sound of the horn. He said that the first time he saw the truck was when it bounced off of his truck after they had collided.
LSA-R.S. 32.233 provides:
“A. The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass at a safe distance to the-left thereof and shall not again drive to the right side of the highway until safely clear of such overtaken vehicle.
“B. The driver of an overtaking vehicle shall give audible and sufficient warning of his intention before overtaking, passing or attempting to pass a vehicle proceeding in the same direction.
“C. The driver of a vehicle shall not drive to the left side of the center line of the highway in overtaking and passing another vehicle traveling in the same direction, unless such left side is clearly visible and free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in perfect safety. Whenever an accident occurs under such circumstances, the responsibility therefor shall rest prima facie upon the driver of the vehicle doing the overtaking or passing.
******
“E. The driver of a vehicle shall not, under any circumstances, overtake or pass another vehicle proceeding in the same direction at any railroad grade crossing or any intersection of the highway, unless permitted or instructed to do so by a duly authorized traffic or police officer.
“F. The driver of a vehicle who has been given adequate warnings by an overtaking and passing vehicle, shall promptly give way to his right in favor of such overtaking and passing vehicle and shall not increase the speed of his vehicle until it has been completely overtaken and passed. Nothing herein shall mitigate against the provisions for prima facie responsibility in Subsection C. * * * ”
LSA-R.S. 32:234 recites:
“A. The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of such *91 vehicle and the traffic upon and condition of the highway.
“B. The driver of a motor truck, when traveling upon a highway outside of a business or residential district, shall not follow another motor truck within four hundred feet, but this shall not be construed to prevent one motor truck overtaking and passing another.”
LSA-R.S. 32:235 provides:
“A. The driver of any vehicle on the highways of this state shall ascertain, before turning around upon any highway, that there is no traffic, vehicular or pedestrian, approaching from either direction which will be unduly delayed and shall yield right-of-way to such approaching traffic and shall not attempt to make a turn unless the way is clear.
“B. * * * and when intending to turn to the left shall approach such intersection in the lane for traffic to the right of and nearest the center line of the highway and in turning shall pass beyond the center of the intersection, passing as closely as practicable to the right thereof before turning to the left. * * ‡ »
LSA-R.S: 32:236 states:
“A. The driver of any vehicle upon a highway of this state, before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, * * *; and, whenever the operation of any other vehicle may be affected by such movement, shall give a signal as required in this Section, plainly visible to the driver of such other vehicle, of the intention to make such movement. * H= *»
A consideration of the testimony and the physical facts surrounding the accident in the light of the above rules of the highway impels us to conclude that plaintiff Thomas was negligent in not insuring his safe passage of defendant Barnett’s truck. Defendant Barnett was negligent in not determining that his way was clear to make a left turn, one of the most dangerous on a public highway.
The fact that the Courts of Appeal of this State might have divided views with respect to the law to be applied to contributory negligence is of no moment in this matter, which is strictly factual. The case of Washington Fire & Marine Insurance Co. v. Firemen’s Insurance Co., 232 La. 379, 94 So.2d 295, is not apposite. It is true that therein we held that before making a left turn a driver must ascertain that he can do so safely and is negligent in not so doing, but, we were not considering such negligence as associated with the negligence of a' passing driver. Herein, we have found defendant Barnett negligent in not ascertaining that he could safely make a left turn, but we have likewise found plaintiff Thomas negligent in not assuring himself that he could safely pass Barnett’s truck.
For the reasons assigned, the judgment of the Court of Appeal, Second Circuit, is affirmed at relators’ costs.

. 116 So.2d 330.

. A hard-surfaced highway, flat in terrain, running north and south.

. “The stories of the principal actors involved in the collision, Thomas and Barnett, as to the facts directly hearing upon the occurrence are in irreconcilable conflict. Plaintiff, Thomas, contended and testified that he began a passing maneuver of the Barnett truck when he was still some 200 feet distance therefrom, at which point he pulled into his left lane of the highway, sounded his horn, and as he came almost abreast of the Barnett truck the driver thereof turned sharply to the left immediately in his path of travel, without giving any signal of his intention, thus causing the collision. On the other hand, and directly in contradiction of plaintiff’s version, the defendant, Barnett, testified that he observed the Thomas truck following his vehicle as they both proceeded on their southbound *90 course in the right-hand or west lane of the highway; that he signaled his intention of mating a left turn by using the directional blinker lights on the truck and by extending his left arm from the cab thereof, despite which signals Thomas pulled his following truck sharply into the left hand lane almost immediately before plaintiff began a sharp left-hand turn. Both Thomas and Monson denied observing any signals indicating a proposed left-hand turn by the Barnett truck. * * * ” [116 So.2d 331.]