FRUGÉ, Judge.
This is a suit for damages instituted! by Octave Bellard against Texas Services,. Inc. and its insurer, Atlantic Insurance Company, arising out of an automobile accident which occurred when an automobile,, owned by Texas Services, Inc. and operated by Rabón Smith collided with an automobile owned and operated by plaintiff.
After trial on the merits, the district court granted judgment in favor of the plaintiff and against the defendants in the amount of $2,197.00. From this judgment,, defendants have appealed to this court.
The facts and issues in this case are closely related to those in a companion suit decided this date, the decree in which is. reported at Traders & General Insurance Co. v. Texas Service, Inc., et al., La.App., 151 So.2d 697. Both appeals were consolidated for argument, and this opinion will set forth the reasons for the judgments in both suits.
*695 The accident causing the injuries and ■damage to plaintiff occurred on December ■6, 1960 at approximately 7:00 p. m. on U. S. Highway 165, about one mile south ■of Kinder, Louisiana. This highway is a two-lane, hard surfaced highway. At the time of the accident, Rabón Smith was •attempting to overtake and pass plaintiff’s automobile, which had edged over the ■center line of the highway pursuant to making a left turn onto a gravel road which ■intersected the highway.
At the place of the accident the highway is relatively straight and level in both ■directions. Plaintiff, immediately preceding the accident, was traveling in a southerly direction and, as he approached the intersection of the gravel road, gave a signal for a turn by turning his blinker in•dicator on his vehicle. It should be noted •that there is some dispute as to whether plaintiff signaled for a left or right turn. According to plaintiff, this signal was first ■applied approximately one block from the intersection after he had looked in his rear ■view mirror and observed the automobile ■driven by Mr. Smith, which appeared to plaintiff to be approximately one quarter ■or one half mile to the rear of his car. Plaintiff further testified that he again looked in his rear view mirror a short -distance before making his left turn and that the vehicle driven by Mr. Smith was -200 to 300 feet behind him.
When plaintiff’s car reached a point approximately adjacent to the side road, he began his left turn maneuver. Plaintiff ■substantially completed his turn — the front wheels of his automobile had reached the ■eastern edge of the highway, while the rear ■wheels were approximately on the center line — when the right front fender of Smith’s ■car collided with the left rear fender of •plaintiff’s car.
Concerning the standard of care which the driver of an overtaking vehicle is held to, the Highway Regulatory Act (LSA-R.S. .32:221 et seq.) requires that he indicate his intention to pass by sounding his horn, Section 233(B), after ascertaining that the left lane is clear, Section 233(A), and that he not attempt to pass at an intersection unless permitted or instructed to do so by a duly authorized traffic or police officer, Section 233(E).
Mr. Smith testified emphatically that plaintiff signaled for a right turn, while plaintiff just as convincingly testified that he signaled for a left turn. The trial judge resolved this issue in favor of the plaintiff and since his conclusion is based upon the credibility of both plaintiff’s and Mr. Smith’s testimony, it is not for us to say he was manifestly wrong.
The evidence establishes that plaintiff gave his left turn signal approximately one block before his car reached the point where the collision occurred. Although Mr. Smith’s testimony does not reflect when he first observed plaintiff’s signal, had he been maintaining a proper lookout, which the law requires, it is obvious that the accident could have been avoided.
Thus, in Pelt v. Home Indemnity Company, La.App., 118 So.2d 148, 151, where the driver of a following automobile was held to be negligent in failing to keep a proper lookout, the Court said:
“ * * *. Now, considering that Mrs. Hughes had her left turn signal working for a period of some 200 to 300 feet prior to the impact, we feel that it was incumbent upon Sgt. Beans to see this signal and to take the necessary precautions of a reasonable and prudent driver. * * * ”
Similarly, in McCallum v. Adkerson, La.App., 126 So.2d 835, 839, the Court stated:
“It is our opinion that plaintiff was negligent in attempting to pass, without giving adequate signals of his intention, at a time when the traffic was decelerating in such a manner as to indicate that the lead vehicle was either preparing to turn or experiencing some sort of mechanical difficulty, *696 and in failing ío observe and heed the left turn signal given by defendant, which negligence was a proximate cause of the accident.” (Emphasis added.)
See also Thomas v. Barnett, 240 La. 363, 123 So.2d 87.
In the instant case, we cannot but conclude that Mr. Smith was negligent in failing to heed the turn signal given by plaintiff.
Defendants, however, in urging error on the part of the trial judge, contend that notwithstanding Mr. Smith may have been negligent in attempting to pass plaintiff, plaintiff was contributorily negligent in pulling into the left lane without looking into his rear view mirror immediately before undertaking such a movement so as to ascertain whether the turn could be made in safety. We think that this complaint is well founded in law.
A left turn, by its very nature being a highly dangerous maneuver, should not be undertaken without a very high degree of care. LSA-R.S. 32:235 (A) provides that “[t]he driver of any vehicle on the highways of this state shall ascertain, before turning around upon any highway, that there is no traffic, vehicular or pedestrian, approaching from either direction which will be unduly delayed and shall yield right-of-way to such approaching traffic and shall not attempt to make a turn unless the way is clear.” Furthermore, it is not enough that the driver intending to make a left turn signify such intention by the appropriate signal and execute the maneuver. He is under a duty to look to his rear just before attempting the left turn in order that he may be sure that the turn can be made in safety. Washington Fire & Marine Ins. Co. v. Firemen’s Insurance Company, 232 La. 379, 94 So.2d 295; Sonnier v. Great American Insurance Company, La.App., 134 So.2d 363; Deshotels v. United States Fire Insurance Company, La.App., 132 So.2d 504.
In Leonard v. Holmes & Barnes, 232 La. 229, 94 So.2d 241, the Supreme Court stated:
“The Court of Appeal found the driver of the truck, Tillman, to be negligent in that he failed to look to his rear just before attempting the left-hand turn, under the well settled lav/ of this state that a person who attempts to make a left turn on a public highway must be sure before doing so that the turn can be made in safety. (Citations omitted.)
“We fully agree with the Court of Appeal’s conclusion. * * * ”
See also Johnson v. Wilson, 239 La. 390, 118 So.2d 450; Thomas v. Barnett, 240 La. 363, 123 So.2d 87; Mentz v. Falconnier, La.App., 144 So.2d 657.
In the instant case, plaintiff first looked to his rear when the car driven by Mr. Smith was approximately one quarter of a mile behind him. He later testified that he looked in his rear view mirror again when he was about 15 feet from the intersection and observed that the Smith automobile was about 200 feet behind him. There is no indication that he looked immediately before commencing his left turn. It is obvious that had he made such an observation he would have seen that the Smith vehicle was rapidly overtaking him. It is likewise obvious that had he taken the precaution of looking to his rear immediately before turning he would have seen that the left turn could not be made in safety. Under the established jurisprudence, this failure to observe and act accordingly was contributory negligence which bars plaintiff’s right of recovery from defendants.
In the companion suit, Traders & General Insurance Co. v. Texas Service, Inc. et al., La.App., 151 So.2d 697, the lower court awarded Traders & General Insurance Co. the sum of $439.00. This sum represented the amount which Traders had to pay Octave Bellard under a collision insurance policy; the latter subrogating Traders to all of his rights and causes of action. Inasmuch as we have found Octave Bellard *697 contributorily negligent and dismissed his suit, Traders & General Insurance Company’s claim as subrogee is likewise without merit.
For the reasons assigned herein, the judgment of the lower court is reversed and plaintiff’s suit dismissed; plaintiff to pay all costs of this appeal.
Reversed.