FRUGÉ, Judge.
This suit arose out of an automobile accident which occurred on November 15, 1963, on Louisiana Highway 13 in Evan *301 geline Parish. Plaintiff brings this action for personal injuries as tutrix of her minor daughter, Mary Merline Bozyone, who was injured in the accident The suit is brought against State Farm Mutual Automobile Insurance Company under the uninsured motorist provision of its insurance policy issued to Herbert Lee Fontenot, whose 1961 Chevrolet was being driven by Mary Mer-line Bozyone when it collided with the 1952 Chevrolet truck owned and operated by Pierre Fontenot.
After trial on the merits, judgment was rendered against defendant in the amount of $3,500.00 for the personal injuries of Mary Merline Bozyone and for an additional $817.45 medical expenses. Defendant appeals, assigning as error the trial court’s findings of negligence on the part of Pierre Fontenot, the lack of contributory negligence on the part of Mary Merline Bozy-one, and the excessiveness of the award.
The accident occurred as Mary Merline Bozyone, proceeding northerly in the 1961 Chevrolet, attempted to pass two pickup trucks following in close succession and also proceeding northerly. The forward pickup truck was being driven by Pierre Fontenot, who at the moment of the collision was attempting to make a left turn into a small road leading to his residence. This road was in the nature of a driveway or lane. The principal point of impact was to the left front of the automobile driven by Miss Bozyone and the left rear of the Fontenot vehicle. The Chevrolet automobile incurred approximately $800.00 damage. The great weight of testimony is that Miss Bozyone was driving at a speed of from 45 to 55 miles per hour and that the pickup truck was proceeding at a much slower speed. The accident occurred at about 4:30 in the afternoon and the weather was clear, cool and dry. The testimony is conflicting concerning the precautionary measures taken by Pierre Fontenot and Miss Bozyone.
In the automobile driven by Miss Bozyone were Joseph Lawrence LaFleur, sitting in the right front seat, and Herbert Fontenot, the owner of the automobile, seated in the back seat with Miss Rose Fontenot Pierre Fontenot was accompanied in his pickup truck by his wife. The following pickup truck was driven by Walter Guillory who had as a passenger Juda Guillory, both of whom were friends of Pierre Fontenot.
Miss Bozyone testified that before attempting to pass the two pickup trucks she sounded her horn. She did not have to increase her speed to accomplish the passing maneuver, since the two trucks were moving considerably slower than her automobile. As she attempted to pass the Fontenot vehicle, she saw Mr. Fontenot give a hand signal with his arm at a 45-degree angle, halfway between the proper signal for a left and a right turn, but that the signal was given too late for her to avoid hitting the truck when it veered into her lane of travel. She stated that Fontenot had already begun to veer into the left lane of travel when he gave the signal. She had not noticed the small dirt road or driveway into which Mr. Fontenot was attempting to turn.
Mr. LaFleur, seated next to Miss Bozy-one, testified that Miss Bozyone sounded her horn before attempting the passing maneuver and then sounded it again when Pierre Fontenot started to make his turn. He stated that the automobile was about 30 feet behind the truck when the truck veered into the left lane of travel. He testified that no signal was given by Pierre Fontenot until he had begun his turn into Miss Bozyone’s passing lane, and then the signal given was with his arm at a 45-de-gree angle.
Herbert Lee Fontenot and Rose Fontenot, seated in the back of the automobile, both testified that they heard Miss Bozyone sound her horn twice just prior to the accident, once before attempting to pass and again a few seconds later. They were, however, talking and were not watching the road ahead and therefore were unable to state whether Pierre Fontenot gave a turn signal.
*302 Mr. Pierre Fontenot testified that he did not hear an automobile’s horn sound at any time just prior to the accident. He stated that he had looked into his rear view mirror and only saw the truck of Walter Guillory following him and he did not see the automobile driven by Miss Bozyone. He further testified that he gave a left turn hand signal with his arm completely extended for about “fifty steps” prior to making his turn.
Mrs. Fontenot, seated next to him, stated that she had seen him give the arm signal for about fifty yards before turning. She also testified that she had not heard the sound of a horn.
Mr. Walter Guillory and Mr. Juda Guil-lory in the truck following Pierre Fontenot testified that they had seen him give a proper turn signal and that they had heard no automobile horn. They both testified that they would have thought Mr. Fontenot would turn when he did, even if no signal had been given, since they knew it was his truck ahead of them and further knew where he lived.
The investigating police officer testified that there were 128 feet of skid marks in the left lane of travel. There is some testimony in the record that Miss Bozyone applied her brakes twice, applying once, then letting them up and applying them again. It does not appear whether the 128 feet of skid marks were in an unbroken line or not
After having heard the testimony of the witnesses, the trial judge concluded:
“The evidence indicates that Mary was in the process of passing two vehicles, one being immediately behind the Pierre Fontenot vehicle. There was some evidence as to a signal given by Pierre Fontenot but apparently it was given too late to warn Mary of the impending left turn. Pierre Fontenot himself testified that he looked behind at the time and didn’t see anything and proceeded to turn. There is no question in the Court’s mind that Pierre Fontenot was negligent in not looking again before attempting his left turn. Thus the only question is whether or not Mary is barred from recovery because of her contributory negligence.
“The Court has studied the demean- or of all the witnesses and concluded that Mary was in no way negligent and that the sole and proximate cause of this accident was the left hand turn made by Pierre Fontenot without first ascertaining whether or not it was safe to do so.”
Our law is well settled that the driver of a motor vehicle who attempts to make a left turn on a public highway must first ascertain that the turn can be made in safety. Jones v. State Farm Mutual Automobile Ins. Co., La.App. 3rd Cir., 157 So.2d 332; Barras v. Fidelity & Casualty Co. of New York, La.App.3rd Cir., 152 So.2d 74. As stated in Bellard v. Texas Service, Inc., La.App.3rd Cir., 151 So.2d 694, “Furthermore, it is not enough that the driver intending to make a left turn signify such intention by the appropriate signal and execute the maneuver. He is under a duty to look to his rear just before attempting a left turn in order that he may be sure that the turn can be made in safety.”
We fully agree with the trial court’s determination that Pierre Fontenot was negligent in attempting a left turn. The record bears out the finding that he did not take sufficient precautions before executing this maneuver.
Since contributory negligence is a matter of special defense, the burden of proof is upon the defendant to establish that Mary Merline Bozyone was in some manner contributorily negligent and that such negligence was the proximate cause of the accident.
The trial judge indicated that he believed the testimony of Miss Bozyone and the passengers in the automobile, who *303 strongly corroborated her version of how the accident occurred. Conversely, he apparently rejected much of the testimony of the other witnesses as being untrue. There is ample evidence in the record to support the trial judge’s holding. As in the cases of Crane v. London, La.App.2nd Cir., 152 So.2d 631; Mitchell v. National Surety Corporation, La.App.2nd Cir., 149 So.2d 213, and Baker v. Great American Insurance Co., La.App.2d Cir., 134 So.2d 567, the defendant has failed to prove negligence by the overtaking driver proximately causing the collision with the left-turning vehicle.

Quantum

Dr. Ransom K. Vidrine, Miss Bozyone’s attending physician, testified that when Miss Bozyone was admitted to the hospital she “was very nervous and upset and complained of a severe headache and blurring of vision, and she had obvious signs of lacerations and contusions of the face. She had evidence of bleeding from lacerations of the lips and face and she was markedly disturbed, almost to the point of hysteria.”
Dr. Vidrine diagnosed her injuries as a moderate to severe brain concussion, loosening of several upper teeth and fracture of two upper front teeth, a laceration of the upper lip, multiple abrasions and contusions of the face and head, and in addition she was in a state of shock described as a “severe anxiety reaction.”
Miss Bozyone remained in the hospital for two weeks, from November 15 to November 29, during which time the principal treatment rendered was for relief of pain and her nervous condition. She made approximately twelve office visits to Dr. Vi-drine after being released from the hospital. The last of these visits was on March 14, 1964, at which time Dr. Vidrine was of the opinion that physically she had completely recovered from the accident. Not being a psychiatrist, Dr. Vidrine would make no prognosis of her mental condition.
Miss Bozyone was treated by Dr. Charles Dupre for the injury to her teeth. He testified that she had incurred fractures to the two central upper incisors and a loosening of all the other upper anterior teeth. Dental services restored her teeth to a normal, well functioning condition. Dr. Dupre’s bill for dental services was $75.00.
Also treating Miss Bozyone was Dr. Robert Thompson, an ear, nose, throat and eye specialist, who stated that she had suffered several subconjunctival hemorrhages, this being a hemorrhage underneath the membrane lining covering the white of the eyes. This condition was cleared up by rest and application of hot compresses.
The district court allowed recovery for medical expenses in the total amount of $817.45, such total being comprised of hospital expenses, $364.45; medical bill of Dr. Vidrine, $238.00; dental bill of Dr. Dupre, $75.00 and bill of Dr. Thompson, $140.00.
In addition, the trial judge awarded $3,500.00 for Mary Merline Bozyone’s personal injuries and pain and suffering. The trial judge has much discretion in fixing the amount allowed for pain and suffering in a personal injury suit. We believe there has been no abuse of discretion in the instant case.
In Jenkins v. Audubon Insurance Co., La.App.1st Cir., 110 So.2d 221, the court awarded $3,000.00 for pain and suffering in recompense for injuries somewhat comparable to those suffered by the plaintiff in the instant suit. In view of Miss Bozy-one’s numerous injuries, we feel an award of $3,500.00 is not excessive.
For the reasons assigned herein, it is ordered, adjudged and decreed that the judgment in favor of Mary Jane Bozyone in the amount of $817.45 be affirmed, and that the judgment in favor of Mary Jane Bozyone for the use and benefit of her minor daughter, Mary Merline Bozyone, in *304 the amount of $3,500.00 be affirmed. Defendant shall bear the cost of this appeal.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.